CONDELL HOSPITAL *et al.*, Appellants, v. THE HEALTH FACILITIES PLANNING BOARD *et al.*, Appellees.

First District (2nd Division) No. 87—1537

Opinion filed September 29, 1987.

Katten, Muchin & Zavis, of Chicago (Steven L. Bashwiner, W. Edward

Webb, Laurence H. Lenz, Jr., and Seth R. Madorsky, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Lance T. Jones, Assistant Attorney General, of Chicago, of counsel), for appellees Health Facilities Planning Board and Department of Public Health.

Bell, Boyd & Lloyd and Shea, Rogal & Associates, both of Chicago (Jeffrey R. Ladd, Lawrence M. Gavin, Daniel J. Lawler, Gerald W. Shea, and Ira A. Rogal, of counsel), for other appellees.

JUSTICE STAMOS delivered the opinion of the court:

The two groups of appellant hospitals (the Condell appellants and the Highland Park appellants) jointly appeal from dismissals of their two respective complaints for administrative review of a decision by appellee board (the Board or the State Board) to issue a permit to appellees Chicago Medical School Hospital, Inc., and University Health Sciences/Chicago Medical School[1] (collectively CMS) for construction of a hospital in Lake County, Illinois. The two cases had been consolidated in the circuit court. Appellee Department (the Department), which was a party of record to the proceedings before the Board, was joined as a defendant in each case pursuant to section 3—107 of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—107). The Board and the Department have been given leave to adopt the briefs of CMS on this appeal, which has been expedited on motion of CMS.

Appellants contend on appeal that (1) the Condell appellants' complaint was not premature and sought review of a final decision of the Board; (2) if the Condell complaint was in fact premature, then the complaint filed by the Highland Park appellants, after a later decision of the Board, was neither premature nor tardily filed; (3) the Highland Park complaint's failure to specify the later decision as the one of which that complaint sought review was not a proper ground for dismissal; (4) appellants adequately exhausted their administrative remedies; and (5) appellants, as parties adversely affected by a final decision of the Board, had statutory standing to seek judicial review

---

[1]In its filings throughout the administrative record, this latter appellee is designated as University of Health Sciences/The Chicago Medical School, apparently its official corporate name. However, counsel for all parties to this appeal and to the administrative review proceeding in the circuit court have referred to this appellee as University Health Sciences/Chicago Medical School, and pleadings in the circuit court and in this court are so captioned.

and were not deprived of that standing by any failure to participate in administrative proceedings or any acquiescence in a final administrative decision.

At the time appellants filed their reply brief, the Highland Park appellants applied under Supreme Court Rule 362 (107 Ill. 2d R. 362) for leave of this court to amend their complaint, and thereafter CMS filed objections to the application. The application was taken with the case.

## I. FACTS

A detailed review of the facts[2] is necessary in order to convey the extent and origins of the procedural quagmire into which the parties have led themselves. Ambiguity in statutes, rules, and administrative actions is partly responsible for the confusion, but sheer procedural irregularity as well as procedural skirmishing by the parties may well be a factor.

### A. ADMINISTRATIVE PROCEEDINGS

### (1) APPLICATION FOR CON

In August 1984, Chicago Medical School Hospital, Inc., advised the Department of its intention to apply for a permit, termed a certificate of need (CON), to construct a hospital in Lake County, Illinois. On November 13, 1984, the Department received an application for a CON, jointly filed by Chicago Medical School Hospital, Inc. (Humana), which was described as a Virginia for-profit corporation that is a wholly owned subsidiary of Humana, Inc., and has authority to do business in Illinois, and by the University of Health Sciences/The Chicago Medical School (the school), an Illinois not-for-profit corporation. The application was later modified or supplemented many times. The voluminous application document, attachments, and supplements, amounting to some 2,000 pages, were filed pursuant to sections 5 and 6 of the Illinois Health Facilities Planning Act (the Planning Act), under which no person shall construct a health care facility (defined as including hospitals) without first obtaining a permit or exemption

---

[2]CMS points out in its brief that the statement of facts in appellants' brief is "replete with arguments" in contravention of Supreme Court Rule 341(e)(6) (107 Ill. 2d R. 341(e)(6)). CMS suggests that appellants' statement of facts should accordingly be disregarded. The court has not adopted the suggestion, which is couched in rhetorically strong terms within CMS's own statement of facts, but agrees with CMS that appellants' counsel have impermissibly included argument in their statement of facts. *E.g.*, appellants' brief at 7, 8, 16.

from the Board. Ill. Rev. Stat. 1983, ch. 111½, pars. 1155, 1156.

The application stated that the proposed 224-bed tertiary-care hospital would be the primary teaching hospital for the school and that the latter has not owned, operated, or controlled its own hospital until now and has been refused repeatedly both teaching affiliations and admitting privileges for its faculty members at Lake County area hospitals. The application also stated that the joint arrangement with Humana would significantly increase the availability of needed medical care for residents of Lake and McHenry counties. The Chicago Medical School is one of three divisions of the University of Health Sciences; it was founded in Chicago in 1912, became part of the University when the latter was established in 1967, and moved with the University to North Chicago in 1974 in conformity with a State plan to regionalize medical schools and to enable the school to serve the area between Chicago and Milwaukee. During several months after filing its initial application, the school engaged in negotiations with other area hospitals to discuss possible affiliations, and CMS supplemented the application with additional information requested by the Board. During this time, the Board was presented in writing with numerous comments from health care professionals and planners, editorial writers, and elected public officials regarding the proposed CMS permit. The application was deemed complete and the Board's review thereof was initiated on February 8, 1985.

On February 14, 1985, the Health Systems Agency for Kane, Lake and McHenry Counties (HSA/KLM) issued to affected parties its "Notice of Public Hearing" regarding CMS's application. HSA/KLM was the health planning organization for the area encompassing the proposed CMS hospital, so recognized by the Board pursuant to sections 8 and 9 of the Planning Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 1158, 1159) and authorized by that Act to review CON applications, to hold public hearings in connection therewith, and to certify to the Board its approval or disapproval thereof on the basis of "standards, criteria or plans of need adopted and approved by [HSA/KLM]." (Ill. Rev. Stat. 1983, ch. 111½, par. 1158.) In addition, the City of Chicago Health Systems Agency (Chicago HSA), which is Chicago's health planning organization, chose to perform its own review as a contiguous organization pursuant to section 8 of the Planning Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1158.) Meanwhile, public comments, Board and HSA/KLM review of the CMS application and negotiations for other possible school-hospital affiliations continued.

After an extensive public hearing that was held on April 4 and 8, 1985, and was accompanied by hundreds of exhibits, HSA/KLM staff

produced a report on May 15, 1985, finding that most of HSA/KLM's review criteria were not satisfied by the CMS application. HSA/KLM's board of directors then voted on June 13, 1985, to recommend denial of the CMS application. Meanwhile, after its own review, hearings, and staff report, Chicago HSA's governing body voted on May 22, 1985, to recommend disapproval of the CMS application.

The State Board's review of the CMS application continued to January 1986 as a result of additional modifications to the application; HSA/KLM and Chicago HSA were permitted to conduct their own additional reviews during this time. On October 10, 1985, HSA/KLM's board of directors voted 14 to 8, with one abstention, on rereview to recommend disapproval of the CMS application as then modified, and one director later filed a minority report. On October 28, 1985, HSA/KLM advised the State Board that revisions to the CMS application as of that date were not substantive and that they did not significantly alter previous HSA/KLM negative findings. On November 20, 1985, after further review, Chicago HSA's governing body again voted to recommend disapproval of the CMS application.

On January 10, 1986, the State Board held a public hearing on the CMS application. After its hearing and its review of a negative staff report by the Department, which provides the Board with administrative and staff support pursuant to section 4 of the Planning Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1154), the Board then rejected by a 2 to 9 vote a motion to approve the CMS application. This vote constituted an intent to deny the application. On January 16, 1986, the Board sent a letter to CMS pursuant to section 10 of the Planning Act, advising CMS of the Board's intent to deny and of CMS's opportunity to appear before the Board and present "such information as may be relevant to the approval of a permit *** or in resistance of a denial of the application." (Ill. Rev. Stat. 1985, ch. 111½, par. 1160.) Although Marshall A. Falk, M.D., the dean and executive vice-president of the school, had testified extensively at the Board's January 10 hearing, CMS responded on January 21, 1986, to the Board's letter of intent to deny by asking to appear, and on February 3, 1986, CMS sent additional information to the Board regarding its application. The Board began reviewing the additional material on February 4, 1986. CMS also provided HSA/KLM with copies of its additional material, and HSA/KLM began its own expedited review process. On March 13, 1986, on the basis of a new negative staff report, HSA/KLM's board of directors voted 11 to 5, with two abstentions, again to recommend disapproval of the CMS application.

Thereafter, at its meeting of May 1, 1986, where CMS appeared,

the State Board considered a negative staff report by the Department as to CMS's additional material, but after testimony and discussion it voted 7 to 2, with two abstentions, to approve CMS's application. In announcing the vote, the chair stated: "The project has been approved[,] the Board has voted approval but *the HSA* must be afforded the opportunity for appeal. They have 30 days in which to do that." (Emphasis added.)

On May 23, 1986, the Board sent a letter (the May order) to CMS, which read in part as follows:

"On May 1, 1986, the [Board] approved your application for permit based upon the project's conformance with the applicable standards and criteria ***.

The State Board rendered its decision following consideration of the application, the areawide health planning organization's (HSA) findings and record of proceeding, the State Agency [Department] Report and the testimony of the applicant.

* * *

[Y]our permit *** is valid for 18 months, expiring on November 1, 1987.

* * *

This permit is subject to *the rights of the areawide health planning organization (HSA) to appeal this decision* of the Board, 77 Ill. Adm. Code Section 1160.610. To proceed to obligate the permit during this period is to do so at your own risk. This permit period and time period for obligation of the project is not authorized by the Act to be stayed during this appeal process. Note, however, that requests may be made of the Board for permit extensions or renewals.

* * *

The project must be obligated by contract, purchase order or lease prior to the expiration of the permit and must proceed toward completion with due diligence.

* * *

Failure to comply with the applicable requirements may result in the State Board taking action to revoke the permit." (Emphasis added.)

(2) RECONSIDERATION AND HSA HEARINGS

In addition, on May 23, 1986, the Board sent a letter to HSA/ KLM pursuant to section 8 of the Planning Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1158) and its own regulations (77 Ill. Adm. Code

1160.610 (1985)), providing a detailed statement of the reasons for the inconsistency between the Board's decision and HSA/KLM's findings, and affording HSA/KLM an opportunity for a hearing before a Board-appointed hearing officer. The letter to HSA/KLM stated in part:

"On May 1, 1986, the Illinois Health Facilities Planning Board *approved* the application for permit of the above referenced project. This *decision* is contrary to the findings of your areawide health planning organization.

\* \* \*

If you decide to exercise your right to a hearing, you must submit your request to the State Board \* \* \* within 30 days \* \* \*.

\* \* \*

If you decide to exercise your right to a hearing, the State Board through the Board Chairman, shall, within 30 days after the receipt of your request, schedule the time and place for the hearing and appoint a hearing officer. The hearing will afford you the opportunity to address the inconsistency(ies) between your organization's findings and the State Board's *decision.* Following its consideration of the report of the hearing, or upon default of the party to the hearing, the State Board shall make its *final determination.*

A copy of the permit letter evidencing the *decision* of the State Board regarding the above-referenced project is attached." (Emphasis added.)

A copy of this letter to HSA/KLM was sent to CMS.

On May 29, 1986, Chicago HSA sent a letter to the Board, requesting a reconsideration hearing on the CMS application. On May 30, 1986, counsel for seven hospitals sent the Board their request for a reconsideration hearing. The hospitals' counsel was the same law firm that represents appellants in the instant case; five of the hospitals were the same ones that now constitute the Condell appellants; and of the other two, one was Highland Park Hospital, which is one of the two Highland Park appellants.

The reconsideration hearings requested by Chicago HSA and the hospitals were apparently sought and were treated by the Board as having been sought pursuant to sections 1160.650, 1220.20(a)(1), and 1220.30 of the Board's rules, which provide for such hearings before the Board when any interested person (other than the recipient of a permit) makes a request therefor within 30 days after a Board decision. In order to obtain such a hearing, such a person must show "good cause," a term that is defined by Board rule. 77 Ill. Adm. Code 1160.650, 1220.20(a)(1), (c), 1220.30 (1985).

On June 12, 1986, after the requests for reconsideration hearings had been filed, HSA/KLM requested a hearing before a hearing officer pursuant to the Board's May 23 letter.

This latter hearing would have differed from the reconsideration hearings sought earlier by Chicago HSA and the hospitals in that it was sought pursuant to section 8 of the Planning Act and sections 1160.610 and 1220.20(a)(3) of the Board's rules. The Planning Act and the Board's rules entitle any areawide health planning organization (HSA) to such a hearing before a hearing officer whenever the Board renders a decision on an application that is contrary to the areawide HSA's findings. The areawide HSA must submit any hearing request within 30 days after the Board decision at issue but is not required to show "good cause" in order to obtain the hearing, and the hearing is before a hearing officer rather than the full Board. (Ill. Rev. Stat. 1985, ch. 111½, par. 1158; 77 Ill. Adm. Code 1160.610, 1220.20(a)(3) (1985).) Although the Board and the parties have sometimes referred to both types of hearings as "reconsideration" hearings, it is clear that they are distinct from each other in regard to authority, procedure, and perhaps issues to be addressed. They were so differentiated by the Board when it subsequently met to consider Chicago HSA's and the hospitals' requests for reconsideration hearings. Furthermore, they are treated as two different types of proceedings in the Federal regulations governing certificate-of-need reviews. 42 C.F.R. secs. 123.104(b)(17), 123.410(a)(11) (1986).

On June 13, 1986, the Board's chairman, Pam Taylor, sent a letter to each of the first group of filers of requests for reconsideration hearings, advising that the requests would be referred to the full Board for a determination as to whether good cause had been shown to reconsider.

On June 30, 1986, counsel for CMS sent the Board a response by CMS to the requests for reconsideration hearings that had been filed. On July 3, 1986, the Board's chairman distributed to Board members copies of CMS's response and a memorandum from the Board's counsel, although she stated that the responsive material was not provided for under Board rules. The record does not disclose the contents of the Board's counsel's memorandum.

On July 10, 1986, the Board met and considered the requests for reconsideration hearings. At the meeting, the Board's executive secretary, Ray Passeri, reviewed the requests for reconsideration hearings and the request of HSA/KLM for a hearing and, according to the transcript, stated:

"[G]iven that the HSA has requested an administrative hearing,

there is a process that must be followed with that decision which will be returning to the Board for a final administrative decision. Therefore, the matters, that the Board action is not yet final relative to the issuance of the permit."

He continued:

"As part of the administrative hearing process there is an opportunity for effective [*i.e.*, affected] parties to intervene. Two of the parties that have submitted a request for reconsideration hearing have also given notice that they intend to petition for intervention at the administrative hearing."

A Board member, Marjorie Albrecht, then asked Passeri:

"How does the—when you said reconsideration, how does that fit into the whole proportion of it? Does reconsideration come back to us before the administrative hearing or the request for it?"

Passeri answered:

"Well, there are two separate sections in the statute. It gets a little convoluted. One portion of the statute where the Board has issued a permit, there is a request, there is a section where any person can request reconsideration of the Board's decision and that's quite independent from the section on administrative hearings which gives that right to an HSA, whose recommendation has been overturned or to an applicant which has been denied by the Board.

I think one of the concerns is not to have two processes going on at the same time."

Thereupon, the Board discussed at length the intricacies of its procedures (1) for reconsideration when good cause is shown, (2) for granting a hearing (sometimes termed by the Board an "appeal fair hearing") to an areawide HSA such as HSA/KLM when such an HSA's recommendation as to a CON application has not been followed by the Board, and (3) for allowing intervention by other parties in any hearing requested by such an HSA.

The discussion included an extensive colloquy involving Board members, Passeri, and Board counsel Barbara Weiner with regard to whether the HSA/KLM-requested hearing and the reconsideration hearings requested by Chicago HSA and the hospitals should be treated separately or whether they should be "merged" because they were contemporaneous. Board counsel felt they should be merged, but, as reflected by the transcript, at least three Board members who spoke did not agree with counsel. It is apparent from the transcript that considerable confusion reigned at the meeting as to the policy

and legal bases for disposing of the hearing requests. A duly seconded motion to grant reconsideration hearings as requested by Chicago HSA and the hospitals then failed (the July decision) by a 3-5 vote, with three abstentions.

The chairman then asked Passeri to "explain the rights of those who have asked for a reconsideration and have been denied." According to the transcript, Passeri replied: "To reiterate that there is administrative hearing that's been requested and that those which have requested intervention, request will be forwarded to the hearing officer and any other parties that have not, I would suggest that that avenue is still open to request intervention in the administrative hearing."

On July 21, 1986, the Board wrote to counsel for the seven hospitals, to Chicago HSA, and to another filer of a request for reconsideration, advising each of them that the Board on July 10 had denied their respective requests for reconsideration hearings. Each letter added:

> "In arriving at the decision the State Board noted that pursuant to 77 Illinois Administrative Code Section 1220.20, the right to petition for intervention in an administrative hearing exists since the Health Systems Agency for Kane, Lake and McHenry Counties, Inc. has requested such a hearing.
> ***
> If you desire to petition the hearing officer for intervention, you should submit your request directly to [him].
> Please provide this office with a copy of the request."

On July 22, 1986, the Board wrote HSA/KLM to advise it of appointment of a hearing officer for its "appeal" of the Board's action on the CMS application. However, on August 14, 1986, HSA/KLM wrote the Board to advise that its board of directors had on that date authorized its executive director to notify the Board that HSA/KLM "will not pursue Aministrative [sic] Appeal of the above-referenced project. By this notice and telephone conversation we formally rescind our request for Administrative Appeal and relinguish [sic] all rights to such an Administrative Appeal ***." The letter further stated that HSA/KLM had so advised the hearing officer.

On August 28, 1986, Chicago HSA wrote the Board to advise that, pursuant to a decision of Chicago HSA's governing body, Chicago HSA had given notice of withdrawal of its petition for intervention in HSA/KLM's administrative proceeding. The petition had been filed on June 20, 1986. Chicago HSA's notice stated that at the prehearing conference held on August 15 after HSA/KLM had given no-

tice of rescission of its request for hearing, the hearing officer directed the parties "to brief the issue as to whether any action in which potential intervenors could participate existed in light of" HSA/KLM's withdrawal. Chicago HSA's notice stated that the notice was being submitted in lieu of any briefs on that issue.

On September 14, 1986, CMS filed a position statement and supporting documents with the hearing officer, but no further memorandum or position statement of any party was received by the hearing officer. CMS's position statement submitted that, because HSA/KLM and Chicago HSA had withdrawn and no other person had sought to intervene to prosecute the "administrative appeal," the hearing officer should dismiss the proceeding and recommend "that the State Board's decision be finalized."

On October 27, 1986, the hearing officer, Douglas C. Cannon, issued his report and recommendation on the HSA/KLM request for hearing. The report and recommendation was accompanied by a transcript of the proceedings that occurred before the hearing officer on August 15, 1986, pursuant to HSA/KLM's original request. In those proceedings, CMS, the Board, Chicago HSA, Condell Hospital, Lake Forest Hospital, Victory Memorial Hospital, and Good Shepherd Hospital had been represented by counsel; one of the Board's counsel was also on the staff of the Department. In those proceedings, counsel for CMS had argued that, despite withdrawal by HSA/KLM, "there is a matter yet before the Hearing Officer." CMS's counsel stated that the Board had denied the pending requests for reconsideration at its May 1, 1986, meeting on the advice of Board counsel that

"all of the people who had filed these would be proper intervenors in an appeal, and that any appeal process was much larger in terms of the scope of issues than a reconsideration hearing.

Rather than have two somewhat parallel procedures going forward, they should have only one.

The Board thereupon denied the motions for reconsideration, and all the parties *** who had filed such, were notified *** that the HSA/KLM had filed its appeal *** and that they all had a right to intervene in that proceeding."

CMS's counsel argued that HSA/KLM's withdrawal of its hearing request was part of a "conspiracy to forum shop" and to facilitate filing and prosecution by appellants of their complaint in the circuit court by enabling them to assert that "you cannot intervene in nothing, and therefore, there is nothing before this Hearing Officer." He argued that because Chicago HSA had filed its intervention petition,

"they have intervened" and "there is a proceeding before this particular Hearing Officer, which should be conducted ***, and we should not allow this *** forum shopping."

The hearing officer then expressed doubt that, as argued by counsel for CMS, the mere filing of a petition to intervene gave a party status in a proceeding prior to a ruling by the hearing officer on the petition. Counsel for the hospitals then objected to CMS counsel's "accusations" and represented that when he learned that HSA/KLM would withdraw, he had been preparing petitions for leave to intervene, which he now had in his briefcase, even though the complaint had been filed in the circuit court to meet a jurisdictional time limit that would have expired on or about August 14, 1986. The hospitals' counsel further argued that "there is nothing left for us to do" because HSA/KLM, "the only party having standing to request that hearing, has withdrawn that request before any proceedings have been had including considerations of any pending or possible request for intervention." The hospitals' counsel added that the transcript of Board proceedings revealed that "the Board was extremely hostile to [the Board's counsel's position that two parallel proceedings were inappropriate] and recognized that these are two entirely separate proceedings." The hospitals' counsel then stated that the administrative review complaint was filed prior to HSA/KLM's vote to withdraw its hearing request, that "we are now before you today with no proceeding," and that CMS's counsel "is simply wrong in his assertion first to forum shopping, but even if he were correct, there is nothing illegal or anything about any kind of conduct that has taken place here." The hospitals' counsel concluded that, even though a withdrawal by one party after intervention had been granted might not cause dismissal of the proceedings, withdrawal by the moving party prior to grant of any intervention should result in dismissal, since "there is nothing to intervene."

However, counsel for Chicago HSA urged that "[t]here is still something pending at least so far as [Chicago HSA] is concerned" and that "this is all lumped together or part of the reconsideration process and that the Board members denied reconsideration based upon the fact that Ms. Weiner told them that they should address the issues as intervenors, and they had a right to intervene in the pending appeal that had been filed." Counsel for CMS stated that the Board's counsel had learned months earlier that the hospitals would file a lawsuit, that it was accordingly disingenuous for the hospitals' counsel to assert that the lawsuit was of recent origin, and that while "two or three members" of the Board had been hostile to their counsel's inter-

pretation, "the final vote indicates that the majority were not." CMS counsel then requested an opportunity to submit briefs.

The hospitals' counsel then stated that, while his clients did not now propose to file a petition to intervene, he would reserve the right "to submit briefs as potential intervenors in the event that you should decide contrary to what appears to be the factual situation." However, CMS counsel then objected to the hospitals' counsel's filing "anything in this proceeding unless he presents you with a petition to intervene" in the nature of a "special and limited appearance." Both counsel then argued at length as to whether an intervention petition should be required before briefing the jurisdictional issue and, if so, whether the petition might be filed only for that limited purpose. The hospitals' counsel expressed his concern that petitioning to intervene might suggest that a proper proceeding was still pending and thus affect the hospitals' standing in circuit court. The hearing officer then stated that he would not be "looking at any brief unless there is some sort of petition to intervene."

On October 27, 1986, Lake Forest Hospital presented the hearing officer with its petition to intervene, which, after argument, was allowed, for the limited purpose of contesting jurisdiction.

In his October 27 report and recommendation, the hearing officer found that he had no jurisdiction to dismiss the proceeding but proposed that the Board find (1) that HSA/KLM be allowed to withdraw its request for hearing; (2) that all interested parties had been allowed to present a petition to intervene; (3) that there now were no parties adversarial to the issuance of a permit to CMS; and (4) that "[t]his administrative hearing should be dismissed, and [HSA/KLM] be found to have relinquished all rights to an administrative hearing."

Thereafter, on November 4, 1986, hospital counsel—at that point representing intervenor Lake Forest Hospital alone—sent the Board its exceptions to the hearing officer's proposed disposition, asserting that after the August 15 hearing CMS had filed a position statement urging that the hearing officer himself dismiss the proceeding; that the hospital had accordingly filed no opposing papers; but that if any party had suggested that the hearing officer should propose to "abdicate[] his responsibility to resolve all procedural issues" and to find that he had no jurisdiction to dismiss the proceeding, the hospital "would most certainly have filed opposing papers." Lake Forest counsel also objected to the hearing officer's finding that HSA/KLM had no right "*ex parte*" to withdraw its request for hearing because to do so might prejudice other parties whose requests for reconsideration had been denied and who had been advised that they might seek to

intervene in the HSA/KLM proceeding. Lake Forest counsel argued that the Board's counsel, the hearing officer, and all parties before the hearing officer had agreed that HSA/KLM could rescind its request for hearing at any time before issue was joined. Lake Forest counsel argued that any effect of HSA/KLM's withdrawal on Chicago HSA's rights became moot once Chicago HSA itself withdrew and that because no other parties filed petitions to intervene, no such parties had interests that could breathe life into voluntarily dismissed proceedings.

Then on or about November 5, 1986, counsel for CMS filed their own exceptions to the hearing officer's recommendations. CMS counsel argued that Lake Forest Hospital had been improperly allowed to intervene on October 27 because its petition was untimely, was filed in violation of the hearing officer's prior order setting a briefing schedule, was contrary to the hospital's alleged prior waiver of the right to file a petition, and was prejudicial to CMS because it deprived CMS of an opportunity to file a reply by October 27.

On November 14, 1986, the Board sent letters to HSA/KLM, Chicago HSA, Humana, the school, the present Condell appellants, and other interested persons. Each letter (the November order) advised the recipient as follows:

"On November 6, 1986, the Health Facilities Planning Board adopted the hearing officer's report and recommendation dismissing the administrative hearing for the referenced project. The permit granted by the State Board on May 1, 1986 for the project *remains* valid and in effect. The action taken by the State Board constitutes its *final determination* on the application." (Emphasis added.)

### B. PROCEEDINGS IN THE CIRCUIT COURT

#### (1) COMPLAINTS

Four of the Condell appellants (not including St. Therese Medical Center) filed their complaint for administrative review in the circuit court of Cook County on August 13, 1986, which was 34 days after the Board had voted to deny their request for a reconsideration hearing and 24 days after the Board had sent its letter advising of the denial. The complaint alleged that (1) the Board's decision to grant a CON to CMS was arbitrary, capricious, and an abuse of discretion; (2) the decision was predicated on an unlawfully promulgated exception to the Board's previously adopted criteria, amounting to unlawful rulemaking, and was thus null and void; (3) the Board's alleged "med-

ical school exception" contravenes statutory criteria and purposes, is accordingly unlawful, and renders unlawful the CON granted on the basis of such alleged exception; and (4) two Board findings on availability of community services and facilities for institutional training and on access of certain groups of persons to health care were against the manifest weight of the evidence. Summons and a copy of the complaint were subsequently served on each of the present appellees.

The Condell appellants (this time including St. Therese Medical Center) then filed their amended complaint for administrative review on August 25, 1986, which was 35 days after the date on which the complaint alleged that they were served notice of the Board's denial of their request for a reconsideration hearing. The present appellees subsequently entered their appearances in the Condell case. The amended complaint was identical with the original complaint except for having joined "St. Theresa Medical Center" as a plaintiff (or "petitioner," to use the complaint's terminology for plaintiffs).

The Highland Park appellants filed their complaint for administrative review in the circuit court on December 19, 1986, which was several months after the Board's July denial of their request for a reconsideration hearing, but only 43 days after the Board's November vote to dismiss the proceedings that followed HSA/KLM's request for a hearing, and exactly 35 days after copies of the November order were mailed by the Board. The body of the Highland Park complaint was identical to the Condell complaint (except for naming different parties as petitioners), including the following allegation: "This Complaint seeks administrative review of the decision of the Illinois Health Facilities Planning Board ('the Board') to grant a certificate of need ('CON') to Chicago Medical School Hospital, Inc. and University Health Sciences/Chicago Medical School to construct and operate a new 224 bed hospital in Lake County, Illinois. That decision was initially rendered on May 1, 1986 and became final on July 10, 1986 when the Board denied petitioners' Request for Reconsideration. Petitioners were served notice of the Board's action on July 21, 1986." Subsequently, the present appellees entered their appearances in the Highland Park case.

Also on December 19, 1986, the Condell appellants (including St. Therese Medical Center) filed their second amended complaint in the circuit court. The second amended complaint was virtually identical with the amended complaint, except that a fifth count was added. Count V referred to the proceedings on HSA/KLM's request for a hearing and to HSA/KLM's and Chicago HSA's decisions to withdraw therefrom. Count V also contained the following paragraphs:

"44. Prior to the KLM HSA's decision, petitioners had a voluntary right to intervene in the hearing, pursuant to Board Rule sections 1180.40—1180.60. Upon being informed of the HSA's imminent action, petitioners determined that it was not in their interest to intervene in the proceedings and that such action was not possible once the primary adversarial party in the proceeding dismissed his action before a petition to intervene had been filed.

\* \* \*

47. On or about October 27, 1986, a hearing was held to determine whether the Administrative proceedings could continue. Over the objection of petitioner Lake Forest Hospital, who had sought and was granted leave to intervene solely to challenge the authority of the Hearing Officer to proceed, the Hearing Officer found that he continued to have jurisdiction over the proceedings and could not dismiss them.

\* \* \*

50. On November 14, 1986, the Board sent written notification of its decision to petitioners. The notification stated that 'the action taken by the State Board constitutes its final determination on the application.' There is no indication as to which 'action' purportedly constitutes the Board's 'final' determination.

\*\*\*

52. Petitioners do not believe that the November 14, 1986 'action' of the Board constitutes a new administrative decision or has any effect on the finality of the Board's May 1, 1986, decision, which became final on July 10, 1986.

53. To the extent, however, that the November 14, 1986 'action' does constitute a new or final administrative decision, petitioners appeal said decision on the grounds set forth in Counts I-IV above.

WHEREFORE petitioners request this Court to enter an Order reversing, in its entirety, the Board's decision to grant a CON to Chicago Medical, and granting to petitioners such other and further relief as the court deems just and proper."

Likewise on December 19, 1986, the Condell appellants filed proofs of service stating that the second amended complaint, "which had been previously filed with this Court on August 25, 1986," was served by mail on December 19.

On January 8, 1987, pursuant to stipulated motion of all parties, the circuit court entered its agreed order consolidating the Condell

and Highland Park cases.

## (2) Motions

On January 9, 1987, the Condell appellants filed their motion for leave to file their second amended complaint. In the motion, they stated that the second amended complaint had been filed without seeking leave of court because, owing to the lack of responsive pleadings in the cause, leave was not believed necessary. The motion then requested leave to the extent that the court believed that leave was required. The record does not disclose whether notice of this motion was given.

Also on January 9, 1987, the parties known on this appeal as CMS filed their motion to strike both the amended complaint and the second amended complaint on the ground that both complaints were filed without leave of court. Notice of this motion was given to the Condell appellants, the Board, and the Department.

Following a hearing on the motion to strike, the court entered an order on January 9, drafted by counsel for CMS and providing as follows:

"1. Movant is given leave to file the aforementioned motion and Petitioners are given leave to file Second Amended Complaint nunc pro tunc;

2. Petitioners shall have 14 days to respond and movants shall have 7 days thereafter to Reply preparatory to ruling by the Court on Feb 6, 1986 at 2:00 P.M.

3. Movants shall have 14 days to respond to Petitioner's Motion for Leave to file Second Amended Complaint, Petitioners shall have 7 days to Reply preparatory to a ruling on Feb 6, 1986 at 2:00 P.M."

Thereafter, on January 23, 1987, the parties now known as CMS filed their "Response in Opposition to Petitioners' Motion for Leave To File Second Amended Complaint Nunc pro Tunc." In it, they stated that at the January 9 hearing (which they erroneously described as having occurred on January 19), the Condell appellants had been given "leave to file their Motion For Leave To File Second Amended Complaint nunc pro tunc to their original filing of the Second Amended Complaint." The CMS parties' response argued that the circuit court lacked power to grant the Condell appellants leave to file an amended complaint that would be retroactively effective as of an earlier date.

Also on January 23, the Condell appellants filed their "Memorandum of Law in Opposition to Respondents' Motion To Strike and in

Support of Petitioners' Motion for Leave To File Second Amended Complaint." In their memorandum, the Condell appellants argued that section 2—616 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—616) had been inapplicable to their filing of amended complaints and that leave to file had thus not been required, even though they were now requesting such leave "so that the record is absolutely clear regarding the scope of this Court's review" and to prevent that review from being "tainted with even a hint of 'procedural irregularity[.]' " They also argued that denial of their motion for leave to file "would serve only to engender additional motion practice and delay this Court's substantive review of the Board's CON decision." However, the Condell appellants conceded that "a nunc pro tunc order would not be appropriate in this case"; accordingly, they withdrew their request for such an order but instead argued for an order that would be "retroactive to the date the Complaint was filed." In addition, if the court should determine that even a retroactive order was inappropriate, the Condell appellants nevertheless requested leave to file their second amended complaint in order to discourage "continuing efforts to make petitioners and this Court jump through procedural hoops" and to give the Condell appellants "their day in court, without further delay." The Condell appellants followed up their memorandum with a notice of intention to present another motion on February 6, 1987, for leave to file their second amended complaint; this second motion dropped the request for a *nunc pro tunc* order and substituted a request for leave to file and that such leave be retroactive to December 19, 1986.

Meanwhile, on January 30, 1987, the CMS parties filed their reply memorandum in support of their motion to strike the first and second amended complaints. Thereafter, the Condell appellants filed their own reply memorandum in support of their motion for leave to file and in opposition to the CMS parties' motion to strike. On February 13, 1987, the court entered an order on the motion to strike and the motion for leave to file. This order granted the motion to strike both amended complaints, denied the motion for leave to file either of them on a *nunc pro tunc* or retroactive basis, and granted the motion for leave to file the second amended complaint as of February 13. The order also granted the CMS parties 10 days to plead to the second amended complaint, established a briefing schedule for any new motion to strike or dismiss, and continued the matter to March 20 for argument on any such motion.

On February 23, 1987, the CMS parties filed a motion to dismiss the second amended complaint and for judgment on the pleadings in

the Condell case, a motion to dismiss the complaint and for judgment on the pleadings in the Highland Park case, and a 41-page memorandum in support of both motions, with 16 exhibits on an additional 237 pages.

Counsel for the Condell and Highland Park appellants then gave notice on March 5, 1987, of their motion for leave to add HSA/KLM and Chicago HSA as parties defendant to both complaints. The motion stated that it was being made in response to one of the arguments advanced by the CMS parties in their motions to dismiss. Also on March 5, the Condell and Highland Park appellants filed a 51-page memorandum of law in opposition to the CMS motions to dismiss, with a 72-page appendix. On March 16, 1987, the CMS parties filed their 35-page reply memorandum in support of their motions to dismiss the Condell and Highland Park complaints.

On April 8, 1987, Chicago HSA filed a petition to intervene in the consolidated actions; the petition stated that Chicago HSA would adopt "all four counts" of the Condell complaint. The complaint tendered by Chicago HSA with its petition stated that it adopted "the Complaint for Administrative review submitted in this cause by Condell Hospital, et al.," and the Highland Park complaint "in their entirety." The record does not disclose whether the circuit court expressly ruled on this petition.

### (3) THE CIRCUIT COURT'S FINAL ORDER

On April 14, 1987, the court entered an order on the CMS parties' motions to dismiss and for judgment on the pleadings, in which the court dismissed the second amended Condell complaint and the Highland Park complaint with prejudice "for the reasons stated in open court" and found that "there is no just reason for delaying enforcement or appeal." On May 13, 1987, the Condell and Highland Park appellants filed their notice of appeal from the dismissal order. Thereafter, on May 21, 1987, the CMS parties filed a motion in which they sought a limited stay "so that the period within which [they] are required to enter into a contract or other obligation to construct the new hospital *** is tolled or otherwise stayed pending appeal." This period would have expired in accordance with its terms "within eighteen months of issuance *** expiring on November 1, 1987," but on May 21, 1987, the circuit court entered an order staying the running of the 18-month period for "the time during which this case is on appeal" and extending the November 1 expiration date accordingly.

On June 8, 1987, the parties stipulated to filing the transcript of circuit court proceedings. The transcript reveals that the May 21,

1987, dismissal order was entered on the following grounds:

(1) Counts I through IV of the second amended Condell complaint were dismissed because they were filed prior to a termination of the administrative proceedings, which the court held was the Board's adoption on November 6, 1986, of the hearing officer's recommendation to dismiss the HSA/KLM proceedings; the court stated that appellants "could have intervened" in those proceedings, which had "had the effect of continuing the cause within the administrative body."

(2) Count V of the second amended Condell complaint, and the portion of the complaint that seeks relief on behalf of St. Therese Medical Center, were filed on February 13, 1987, which was beyond the 35-day period from the Board's November order, and accordingly they were untimely.

(3) As to count V, the Condell appellants made no showing that their rights were adversely affected by the hearing officer's decision, nor had they shown that they had standing to contest the decision, because only Lake Forest Hospital intervened and then only for the purpose of dismissing the HSA/KLM "appeal," while the other Condell appellants chose not to participate, and even as to Lake Forest Hospital it was "difficult to discern how it was aggrieved as it desired dismissal of the appeal and the Hearing Officer's only decision concerning the appeal was dismissal."

(4) The Highland Park appellants "allege that they were 'served' with the decision concerning the KLMHSA decision on November 14, 1986. It is impossible to tell what this means in relation to the Administrative Review Act or the Illinois Administrative Code. This Court will dismiss the Highland Park Hospital case because the Plaintiffs therein have yet to establish that they were served notice on November 14, 1986 and they do not seek review of the final order." The court later added in regard to the Highland Park complaint: "[T]he only thing that you appealed in that case is the May and June order. You never refer to the November order. And to come in—you weren't even a party to the hearing. So you have no standing."

(5) Appellants' failure to name HSA/KLM and Chicago HSA as defendants was not fatal to their complaints, because the complaints might be amended to add those parties as defendants.

## II. OPINION

### A. The Condell complaints

The basis for the circuit court's dismissal of the "original" counts

I through IV in the second amended Condell complaint is its finding that they were filed prematurely. As contained in the original Condell complaint, they were filed within 35 days after notice of the Board's July denial of the request to reconsider its decision to grant a CON to CMS. However, the circuit court held and CMS contends that the July decision was not a final and appealable decision of the Board in terms of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). Thus, the first question before us is whether the July decision was final.

 Under section 11 of the Planning Act, the Administrative Review Law governs judicial review of final administrative decisions of the Board. The term "administrative decisions" is as defined in section 3—101 of the Administrative Review Law. Ill. Rev. Stat. 1985, ch. 110, par. 3—101; ch. 111½, par. 1161.

Section 3—101 of the Administrative Review Law, defining "administrative decision" or "decision," reads in part as follows:

> *"In all cases in which a statute or a rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time* \*\*\*, *and an application* for such rehearing or review *is made,* no administrative decision of such agency shall be final *as to the party applying therefor* until such rehearing or review is had or denied. *However,* if the particular statute permits an application for rehearing or other method of administrative review to be filed with the administrative agency *for an indefinite period of time* after the administrative decision has been rendered \*\*\*, *then the authorization for the filing of such application* for rehearing or review *shall not postpone the time when the administrative decision* as to which such application shall be filed *would otherwise become final, but the filing of the application* for rehearing or review with the administrative agency *in this type of case shall constitute* the commencement of *a new proceeding* before such agency, and the decision rendered in order to dispose of such rehearing or other review proceeding shall constitute a new and independent administrative decision. *If such new and independent decision consists merely of the denial of the application for rehearing or other method of administrative review, the record* upon judicial review of such decision shall be limited to the application for rehearing or other review and the order or decision denying such application and *shall not include the record of proceedings had before the rendering of the administrative decision* as to

which the application for rehearing or other administrative review shall have been filed *unless the suit for judicial review is commenced within the time in which it would be authorized* by this Act *to have been commenced if no application for rehearing or other method of administrative review had been filed.*" Ill. Rev. Stat. 1985, ch. 110, par. 3—101.

Under section 1220.20 of the Board's rules, any interested person (other than the CON recipient) may, for good cause, request a hearing to reconsider a Board decision to approve an application. The request must be submitted within 30 days after the date of the Board's decision. In hearings requested by areawide HSAs whose recommendations were contrary to a Board decision (these hearings being also termed "reconsideration" hearings in section 1220.20), " 'Right of Intervention' exists *** for anyone who demonstrates 'good cause.' " 77 Ill. Adm. Code 1220.20 (1985).

When six of the present appellants requested reconsideration of the decision to grant a CON to CMS, they were doing so "within a specified time" in accordance with the first above-quoted sentence of section 3—101; therefore, until their request had been granted or denied, the CON decision was not final as to them. (Ill. Rev. Stat. 1985, ch. 110, par. 3—101.) Once their request had been granted or denied, the decision became final and appealable by them as far as section 3—101 of the Administrative Review Law and section 11 of the Planning Act are concerned. (Ill. Rev. Stat. 1985, ch. 110, par. 3—101; ch. 111½, par. 1161.) The finality of the May order, which the July 10 decision refused to reconsider; can also be seen in the fact that it started a period of validity to run on the permit it granted; it imposed obligations on CMS to perform in accordance with the permit; and the running of its validity period could not be stayed by any further administrative proceedings such as HSA/KLM's request for a hearing. (Indeed, in order to secure a stay, CMS was required to obtain an order from the circuit court.)

Had the six appellants failed to file their request for reconsideration, they might have run afoul of section 3—102 of the Administrative Review Law, which provides that "[i]f under the terms of the Act governing the procedure before an administrative agency an administrative decision has become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed by such Act, such decision shall not be subject to judicial review hereunder excepting only for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter." (Ill. Rev.

Stat. 1985, ch. 110, par. 3—102.) Under section 12(1) of the Planning Act, the Department has the power and duty, with prior approval of the Board, to prescribe rules that are required to carry out the Act's provisions and purposes. (Ill. Rev. Stat. 1985, ch. 111½, par. 1162(1).) In accordance with section 12(1) and the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1001 *et seq.*), the Department has promulgated section 1220.20 of the Board's rules, which provides that "[i]f no request for a reconsideration hearing is received within 30 days from the State Board's decision, the right to reconsideration hearing shall be considered to be waived." (77 Ill. Adm. Code 1220.20 (1985).) Failure to file a reconsideration request and the consequent waiver of that right would allow the finality of a Board decision to go unchallenged by the defaulting party, thereby arguably invoking the bar of section 3—102 against judicial review. Ill. Rev. Stat. 1985, ch. 110, par. 3—201; see *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 357-58, 326 N.E.2d 737, 741-42; *McKenna v. Board of Trustees* (1980), 90 Ill. App. 3d 992, 998, 414 N.E.2d 123, 128; *Miller v. Department of Public Aid* (1979), 69 Ill. App. 3d 477, 479-80, 387 N.E.2d 810, 813; but see *Jackson Park Yacht Club v. Illinois Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 548-49, 417 N.E.2d 1039, 1044-45; *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 1037, 355 N.E.2d 230, 233 (construing predecessor to section 3—101 as establishing finality unless a rehearing request is filed, thus allowing judicial review without filing such request); *cf. Levers v. Anderson* (1945), 326 U.S. 219, 222, 90 L. Ed. 26, 29, 66 S. Ct. 72, 73 (where rehearing authorized but not sought, judicial review may be available).

In any event, once the Board denied the reconsideration request of the six appellants who filed it, they had no other right to an administrative remedy. Although an HSA has a right under section 8 of the Planning Act to request a hearing if its recommendations were not followed by the Board decision, that right belongs to the HSA alone. (Ill. Rev. Stat. 1985, ch. 111½, par. 1158.) And although various sections of the Board's rules grant to "anyone" or "any interested person" who shows good cause (77 Ill. Adm. Code 1220.20(a)(3) (1985)), to "interested parties" (77 Ill. Adm. Code 1180.60(a) (1985)), or to "adversely affected persons" (77 Ill. Adm. Code 1180.40(e) (1985)) a "right" of intervention in any such HSA-requested hearing, intervention depends on a showing of defined good cause and is to be effected by petition to a hearing officer that sets forth grounds. The hearing officer may grant or deny the petition on the basis of defined criteria. If the hearing officer grants a petition to intervene, the intervention

may be restricted to certain issues. (77 Ill. Adm. Code 1180.40, 1180.60, 1180.70(g)(1)(C), 1220.20(a)(3), (c) (1985).) During oral argument in this court, counsel for appellants and for CMS both stated that, at least if their petition were timely, appellants might have intervened as of right in an HSA/KLM-requested hearing; but, upon an integrated reading of the Board's somewhat roundabout rules and upon examining the Board's July 21 letter reference to a "right to petition for intervention," intervention as of right does not appear to be available.

It is apparent that the "right" to intervene depends not only on an HSA's first filing a request for hearing, but also on the hearing's being still viable at the time of petitioning to intervene, and on the discretion of the hearing officer as to whether and on what terms to allow intervention. Meanwhile, the 35-day period for filing a complaint for administrative review of the arguably final Board decision will be running, while a potential intervenor or complainant ponders at its own peril whether to refrain from filing a possibly premature complaint for administrative review and to wait for an opportunity to seek intervention at a potential new administrative stage, or whether to file a complaint in the circuit court within 35 days of the arguably final decision and thus to risk learning too late that an HSA-requested hearing constituted a continuation of administrative proceedings in which instead leave to intervene should have been sought. (*Cf. Pearce Hospital Foundation v. Illinois Public Aid Com.* (1958), 15 Ill. 2d 301, 154 N.E.2d 691 (letter was final order notwithstanding consideration and denial of later request for hearing).) Despite any appearance in the present case to the contrary of his conclusion, the words of a late supreme court justice in another connection are apt here: "I do not believe the General Assembly intended that the path from the Industrial Commission to the circuit court should be an obstacle course." *International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, 194, 374 N.E.2d 182, 188 (Dooley, J., dissenting).

■ Moreover, and perhaps most significantly, the second quoted sentence of section 3—101 of the Administrative Review Law provides that when an application for "other method of administrative review" is permitted "for an indefinite period of time" after a decision has been rendered, the filing of such an application constitutes commencement of a new agency proceeding, which will yield a new and independent administrative decision. (Ill. Rev. Stat. 1985, ch. 110, par. 3—101.) In the present case, any right in the Condell appellants to file an intervention petition existed for an indefinite period of time, because even though an HSA that wanted a hearing would have to

file a request for it within 30 days, once it was requested a potential intervenor could present a petition at any time during proceedings on the request. (*Cf. Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893 (rehearing that was available at any time invoked second clause of section 3—101).) And in the present case, though admittedly a complex one procedurally, it took some four months for the HSA-initiated proceedings to be concluded, even without receiving a single piece of the undoubtedly voluminous substantive evidence that would have been offered if the HSA had persevered with its hearing request. Potential duration of such magnitude qualifies as "an indefinite period of time"; thus, we hold that the second quoted sentence of section 3—101 cuts any procedural link, for purposes of a complaint for administrative review, between the Board's July 1986 decision and the potential opportunity of the Condell appellants to intervene thereafter in any HSA-initiated hearing. The July decision of the Board was final as to appellants.

Our holding is fortified by the apparent fact that, according to section 3—101 of the Administrative Review Law, had a petition for intervention been filed by the Condell appellants and merely been denied, the subsequent record on review could not have included any of the administrative proceedings held prior to filing the intervention petition if the circuit court complaint were not filed within 35 days of the Board's July decision. Thus, the Condell appellants' filing of their complaint within 35 days of the July decision acted to prevent this potential statutory limitation from denying them full judicial review of their case. Ill. Rev. Stat. 1985, ch. 110, par. 3—101.

■■ Accordingly, the Condell appellants had sufficiently exhausted their administrative remedies and were appealing from a final decision of the Board when they filed their complaint for administrative review in August 1986. Even if they might have gone on to intervene in an HSA-maintained administrative proceeding after filing their complaint for administrative review of the Board's July decision, such duality of remedy falls within a recognized multiple-remedy exception to the exhaustion doctrine. (See *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 214, 486 N.E.2d 893, 897-98 (availability of rehearing did not negate exhaustion of first hearing remedy); *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, 742; *Village of Cary v. Pollution Control Board* (1980), 82 Ill. App. 3d 793, 799, 403 N.E.2d 83, 87, *appeal denied* (1980), 81 Ill. 2d 590 (further exhaustion not required where multiple administrative remedies exist and one has been exhausted); *cf. Consolidation Coal Co. v. Department of Labor* (1985), 138 Ill.

App. 3d 541, 543-44, 485 N.E.2d 1102, 1104-05; *Hoffman v. Illinois Department of Registration & Education* (1980), 87 Ill. App. 3d 920, 924-25, 410 N.E.2d 291, 293-94; *Oliver v. Civil Service Com.* (1967), 80 Ill. App. 2d 329, 333-34, 224 N.E.2d 671, 673-74, *appeal denied* (1967), 36 Ill. 2d 631 (decision final as to party when rendered, if no provision for rehearing at party's instance).) In addition, as already noted, section 3—101 indicates that petitioning for such intervention would constitute commencement of a new proceeding. Ill. Rev. Stat. 1985, ch. 110, par. 3—101.

In connection with an appellant's difficulty in predetermining whether the latest administrative decision by the Illinois Commerce Commission would be found to have made substantial changes from a former order so that another rehearing petition would be required before filing an appeal, our supreme court stated: "We can find no valid reason for placing an appellant in such a dilemma. In fact, while not raised by appellants, imposing such a burden might be a denial of procedural due process. The [appellees] have not been prejudiced by appellants' election of remedy ***." (*Central Illinois Light Co. v. Illinois Commerce Com.* (1970), 47 Ill. 2d 257, 260, 265 N.E.2d 154, 156.) The added uncertainty regarding the present appellants' intervention rights in a proceeding from which the initiator had later withdrawn only underscores the unfairness of their dilemma. And, though "[c]ourts are well-advised to refrain from interfering in the administrative process until administrative remedies are exhausted" (*Humana Hospital Corp. v. Blankenbaker* (7th Cir. 1984), 734 F.2d 328, 332), nevertheless "judicial review is not to be barred by the power of an administrative agency to reconsider its decision after judicial review has been initiated" (*Motorola, Inc. v. Illinois Fair Employment Practices Com.* (1966), 34 Ill. 2d 266, 272, 215 N.E.2d 286, 290).

■ Nor did the Condell appellants lack standing: They were "adversely affected persons" under Board rules, being "health care facilities *** located in the health service area in which the project is proposed to be located which provide services similar to the services of the applicant ***." (Ill. Adm. Code 1180.40(e)(5) (1985).) Under section 11 of the Planning Act, "[a]ny person who is adversely affected by a final decision of the State Board may have such decision judicially reviewed." (Ill. Rev. Stat. 1985, ch. 111½, par. 1161.) A competing health care facility has been held to have standing to challenge the grant of a CON. (*Manor Healthcare Corp. v. Northwest Community Hospital* (1984), 129 Ill. App. 3d 291, 294, 472 N.E.2d 492, 494.) Thus, the Condell appellants had standing as complainants in the circuit court.

■■ The learned trial judge may have been correct in holding that the Condell appellants lacked standing to challenge the independent November order dismissing the HSA/KLM proceedings in which they did not meaningfully participate; he regarded that as the only final order, but that is not the order that the Condell appellants are challenging, and the July decision was final as to them. This court does not now decide their standing as to the November order; however, any lack of standing as to the latter order is immaterial to their standing in relation to the July decision. Besides, parties do not necessarily lose standing to challenge an underlying decision merely because they procure or acquiesce in the technical order that frees it for review, or because they can be said in some way to have benefited from all or part of a decision. See *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 314, 430 N.E.2d 1005, 1011 (Attorney General did not lack standing to appeal from dismissal and refusal to allow amendment of his antitrust complaint simply because he himself had obtained a final dismissal in order to secure an appealable order and dispatch a procedural "headless beast that could not be moved off dead center, clogging the court"); *Ambassador Insurance Co. v. Wilson* (1978), 65 Ill. App. 3d 418, 420, 382 N.E.2d 605, 607 (defendant could appeal from order reinstating suit even though it directed payment of her attorney fees).

CMS argues that, because the Board appointed a hearing officer for the HSA/KLM proceeding on July 10, 1986, which was the same day on which it denied the Condell appellants' request for reconsideration, and because the Board directed those appellants' attention to the possibility of intervening in the HSA/KLM proceeding, the July 10 denial of appellants' request for reconsideration was not final because it did not "terminate[] the proceedings before the administrative agency" (Ill. Rev. Stat. 1985, ch. 110, par. 3—101) but rather "mandated" further proceedings.

■ CMS's argument ignores the language in the first and second quoted sentences of section 3—101 regarding the definition of a final order and a new proceeding. In addition, the Board's July denial did not mandate any further proceedings but merely drew attention to the pendency then of HSA/KLM's request for a hearing and the opportunity of interested parties to seek to intervene in that hearing. Given the manifest confusion on the part of Board members regarding their counsel's statements concerning the relationship between appellants' reconsideration hearing request and an HSA's hearing request, it would be folly to glean any such "mandate" of further proceedings from the record of denial of the reconsideration request.

The cases cited by CMS to support their contention on nonfinality are inapposite. In *Clean Air Coordinating Committee v. Environmental Protection Agency* (1976), 42 Ill. App. 3d 124, 355 N.E. 2d 573, and *International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, 374 N.E.2d 182, it was the administrative review seekers themselves who had filed the pending rehearing requests that impeded finality of the orders from which they appealed. In the present case, the alleged impediment stems from the filing of a hearing request by another party altogether, which party subsequently withdrew it, and in which hearing request appellants did not join except for the intervention by one of them solely to support dismissal of the abandoned proceeding. (*Cf. People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.) In *International Paper Co. v. Industrial Com.* (1984), 99 Ill. 2d 458, 459 N.E.2d 1353, the order was not final because the administrative agency had indeed remanded proceedings to an arbitrator to assist it in determining an appropriate award—a true "mandate" of further proceedings, unlike the present case.

Therefore, counts I through IV of the Condell appellants' second amended complaint should not have been dismissed.

■■■ As for count V and inclusion of St. Therese Medical Center as a plaintiff in the second amended complaint, these elements were not contained in the timely Condell complaint filed in August 1986. They were properly added only in February 1987, when the trial court granted leave to amend the complaint accordingly. The trial court correctly struck the first amended complaint filed in August, in which St. Therese had made its timely but unauthorized appearance, and the second amended complaint filed in December, in which count V had made its otherwise timely appearance, because both such amended complaints were filed without leave of court. (See *Petrella v. Leisky* (1981), 92 Ill. App. 3d 880, 417 N.E.2d 134.) An amendment filed without leave may be stricken and must be disregarded on review. (*Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 447 N.E.2d 1358.) Filing without leave does not toll the statute of limitations. (*McGinnis v. A. R. Abrams, Inc.* (1986), 141 Ill. App. 3d 417, 490 N.E.2d 115, *appeal denied* (1986), 112 Ill. 2d 560.) By the time count V and St. Therese reappeared after leave was obtained, the 35-day period had long since expired for appealing from the order of which review was sought. Therefore, the trial court correctly dismissed count V and St. Therese Medical Center as plaintiff in the second amended Condell complaint.

## B. The Highland Park Complaint

■ By its terms, the Highland Park appellants' complaint sought review of the Board's July 1986 decision refusing to reconsider its May order, yet the complaint was not filed until December. It is logically impossible for both the original Condell complaint and the Highland Park complaint to be filed months apart, yet for both to appeal in timely fashion from the same final order. Under the statute, the Highland Park appellants' complaint was clearly filed too late for administrative review of the Board's July decision (Ill. Rev. Stat. 1985, ch. 110, par. 3—103; *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893), and the trial court properly dismissed it as untimely. In addition, one of the Highland Park appellants—Good Shepherd Hospital—does not appear ever to have requested reconsideration of the Board's May order, thus arguably forfeiting its appeal rights for that reason alone. Ill. Rev. Stat. 1985, ch. 110, par. 3—102; see *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737; *McKenna v. Board of Trustees* (1980), 90 Ill. App. 3d 992, 414 N.E.2d 123; *Miller v. Illinois Department of Public Aid* (1979), 69 Ill. App. 3d 477, 387 N.E.2d 810; but see *Jackson Park Yacht Club v. Illinois Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 417 N.E.2d 1039; *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230; *cf. Levers v. Anderson* (1945), 326 U.S. 219, 90 L. Ed. 26, 66 S. Ct. 72.

In their application taken with the case, the Highland Park appellants seek leave of this court under Supreme Court Rule 362 (107 Ill. 2d R. 362) to amend their complaint so that it would refer to notice of the Board's November order as having been sent within 35 days before the Highland Park appellants filed their complaint.

The November order dismissed HSA/KLM's proceeding, and the proposed amendment still does not state that the complaint seeks review of that order or state any grounds for seeking such review. Even if the amendment were so worded, the Highland Park appellants might lack standing to obtain review of the November order, since they did not participate in the HSA/KLM proceeding that the order dismissed and, as far as dismissal of the HSA/KLM proceeding is concerned, do not appear aggrieved thereby in view of their previous statement that they do not want to reverse that dismissal.

In addition, as CMS urges in its objections to the application, the 35-day time limit for seeking review by the circuit court is jurisdictional. (*Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893; *In re Crotty* (1983), 115 Ill. App. 3d 248, 450 N.E.2d 399, *appeal denied* (1983), 96 Ill. 2d 538.)

Any attempt to relate the proposed amendment back to December, when the complaint was filed without specifying the November order as the one of which review was sought, might be "tantamount to allowing [applicants] to confer jurisdiction upon the court where none had existed before." *Hale v. Ault* (1974), 24 Ill. App. 3d 10, 13-14, 321 N.E.2d 151, 153, *appeal denied* (1975), 58 Ill. 2d 593.

■■ Because the defects just mentioned would remain even if the proposed amendment were made, applicants have not shown the proposed amendment to be necessary. (107 Ill. 2d R. 362.) Moreover, because it merely recites that notice of the November order was mailed and that the order does not contain the findings that are the subject matter of the appeal, the proposed amendment does not seek to raise any issues within the meaning of Rule 362, whether or not such issues are supported by the facts in the record. (107 Ill. 2d R. 362.) Accordingly, the Highland Park appellants' application for leave to amend their complaint should be denied.

### C. CONCLUSION

The Highland Park appellants' application for leave to amend their complaint is denied. The circuit court's judgment is affirmed insofar as it dismissed the Highland Park appellants' complaint and dismissed count V and St. Therese Medical Center from the Condell appellants' second amended complaint. The circuit court's judgment is reversed insofar as it dismissed counts I through IV of the Condell appellants' second amended complaint, and this cause is remanded to the circuit court of Cook County for further proceedings. In view of our disposition of the appeal and application, it is not necessary to discuss other contentions made by the parties.

Affirmed in part; reversed and remanded in part.

HARTMAN and BILANDIC, JJ., concur.