STEPHEN D. DANISON, Plaintiff-Appellant, Cross-Appellee, *v.* HIRAM PALEY, Mayor of the City of Urbana, *et al.*, Defendants-Appellees, Cross-Appellants.

Fourth District   No. 13430

Opinion filed September 23, 1976.

J. Steven Beckett and Donald M. Reno, Jr., both of Reno, O'Byrne & Kepley, of Champaign, for appellant.

Webber, Balbach, Thies & Follmer, of Urbana, for appellees.

1034

Stanley H. Jakala, of Berwyn, for *amicus curiae* Fraternal Order of Police.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The Urbana Civil Service Commission entered an order suspending plaintiff-appellant for a period of 30 days without pay. The circuit court, on administrative review, affirmed. Plaintiff appeals from that judgment. Defendant Hiram Paley cross-appeals from the trial court's denial of his motion to dismiss plaintiff's complaint for want of jurisdiction. We reverse.

On November 25, 1974, charges for termination of the employment of plaintiff, Urbana police officer Stephen Danison, were filed with the Urbana Civil Service Commission. The charges alleged that plaintiff violated certain Urbana police department regulations in that, on October 25, 1974, during the course of an official investigation, he knowingly gave false information concerning an incident which had occurred on October 12, 1974.

The first issue is whether plaintiff, as a civil service employee, was entitled to the written warnings set out in section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18) prior to his interrogation on October 25, 1974. To determine this question requires a review of the events which gave rise to that interrogation.

The October 12, 1974, occurrence concerned a traffic incident involving plaintiff's attempt, while on off-duty status in his private vehicle, to apprehend Curtis Groves for a minor traffic violation. Urbana Police Chief Leary directed another officer to obtain reports on the incident since, although it was listed in the watch commander log, there were no reports. The officer, Captain Long, in a memo dated October 18, 1974, indicated that he felt the case was closed. The memo was accompanied by a report made October 17, 1974, by Officer Danison.

On October 22, 1974, Leary learned that Curtis Groves had filed a complaint with the Urbana Human Relations Commission concerning the incident. The statement Groves had made was given to Leary. After noting apparent conflicts between Groves' and plaintiff's version of the October 12 incident, Leary determined to make a full investigation. By memo dated October 23, 1974, he instructed Long to give attention to violations of certain departmental rules and regulations. Among the specific regulations cited were those pertaining to false reports and discipline for failure to comply with departmental rules. Also on October 23, Leary, by letter, informed plaintiff that an investigation had been commenced into possible misconduct on his part during the incident. The letter clearly did not comply with the section 10—1—18 warnings. On October 25, 1974, plaintiff was interrogated, which interrogation was recorded and later transcribed.

■■ The charges filed before the Commission and the suspension ordered, were not based on misconduct on October 12, but on lying during the course of the investigation, specifically during the October 25, 1974, interrogation.

Section 10—1—18 provides, in part:

> "Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or department agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay." Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.

It is clear from the record that, prior to October 25, the investigation had focused upon plaintiff and his possible violation of departmental rules concerning false reports. Defendants argue that the section 10—1—18 warnings do not apply because there was no intent to seek dismissal prior to October 25. Mayor Paley, in his testimony, admitted that although no decision had been made, there was that possibility prior to October 25. The statute provides that the warnings must be given when the results "may" be the basis for filing charges. In the case at bar, there was the known possibility and that possibility ripened into actuality.

Defendant also argues that it was impossible to give warnings prior to the interrogation when the basis for the charge was lying during the interrogation. We would be more sympathetic to this contention but for the clear showing in the record that, prior to that interrogation, those in command of the police force had focused not only upon plaintiff but also upon the specific charge of which he was accused and found guilty, namely submitting false reports concerning the October 12 incident. Danison's superiors knew what they were looking for and they got it. Under these circumstances notice is required.

Defendant also argues that such a construction of section 10—1—18 would have adverse administrative consequences. Police officers are required to make numerous routine reports. There is always the possibility, albeit remote, that any individual report may contain a knowing false statement. Are we, asks defendant, required to give a

blanket section 10—1—18 warning before accepting any report or else be precluded from seeking dismissal based on the false statements? The answer, of course, is no. No one contends, and we do not believe, that any warnings on making false reports were required to be given prior to Danison's October 17 report, when his superiors had no reasons for suspicion but were merely trying to determine the facts of the incident. However that situation was far different than the one presented on October 25. Concern was serious enough then so that a formal investigation was initiated and safeguards such as recording the interview were taken. Clearly section 10—1—18 does not apply to routine reports and requests for information by one's superiors.

While we may not set aside findings of fact by an agency unless they are against the manifest weight of the evidence, we are not bound by the agency's or the trial court's conclusions of law. (*Caterpillar Tractor Co. v. Department of Revenue* (1963), 29 Ill. 2d 564, 194 N.E.2d 257.) Under the undisputed facts of this case, plaintiff was entitled (as a matter of law) to the section 10—1—18 warnings prior to his interrogation on October 25, 1974. They were not given. Accordingly the order of suspension is reversed.

In the circuit court, defendant Paley filed a motion to dismiss plaintiff's complaint for administrative review and defendant Urbana Civil Service Commission filed a special and limited appearance objecting to the jurisdiction of the court, both motions based on the ground that plaintiff had failed to exhaust his administrative remedies. The alleged failure was plaintiff's failing to file a petition for rehearing as permitted by Rule 11.5 of the Urbana Civil Service Commission. The trial court denied both motions. Paley has cross-appealed the denial of his motion.

Section 1 of the Administrative Review Act provides, in part:

"In all cases in which a statute or a rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time (as distinguished from a statute which permits the application for rehearing or administrative review to be filed at any time before judgment by the Administrative Agency against the applicant or within a specified time after the entry of such judgment), and an application for such rehearing or review is made, no administrative decision of such agency shall be final as to the party applying therefor until such rehearing or review is had or denied." Ill. Rev. Stat. 1973, ch. 110, par. 264.

Rule 11.5 of the Commission allows petitions for rehearing to be filed within 30 days. Defendant argues that, under section 1, plaintiff was required to file a petition for rehearing before he could be deemed to have exhausted his administrative remedy. Defendant cites *Oliver v.*

*Civil Service Com.* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671. There is language in that case which supports defendant's position. However, that language is clearly dicta, as the agency in question had no provision for rehearing.

By the express language of section 1 of the Administrative Review Act, an administrative decision is final unless a rule of the agency permits an application for rehearing to be filed *and* such application is filed. Here plaintiff did not file such an application. The trial court did not err by denying the defendant's motion to dismiss.

A party may seek administrative review only after a final decision by the agency. In this way all the facts are set before the agency which may then utilize its expertise. If a party succeeds before the agency, judicial review is unnecessary. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, 741-42.) In the case at bar, plaintiff's position on section 10—1—18 of the Municipal Code was brought before the Commission by his motion to dismiss. That motion was briefed and argued and the commission ruled against plaintiff. No further purpose would be served by requiring an application for rehearing in all cases before judicial review could be had.

Accordingly, for the reasons expressed above the decision of the circuit court of Champaign County is reversed.

Reversed.

TRAPP, P. J., and CRAVEN, J., concur.