FRED M. STRUBE *et al.*, d/b/a Strube's 66, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—92—0468

Opinion filed March 15, 1993.

Diana M. Jagiella, of Howard & Howard, of Peoria, for petitioners.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondents.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiffs, Fred and Cynthia Strube, appeal from the decision of the Illinois Pollution Control Board (the Board) denying their reimbursement request for the cost of replacing a concrete driveway, which had to be destroyed to allow the removal of soil contaminated by petroleum. The Illinois Environmental Protection Agency (IEPA) denied the Strubes' reimbursement request. The Board affirmed the IEPA decision and this appeal follows.

The Strubes raise four issues on appeal. They claim that the IEPA must reimburse them for their driveway repaving cost because: (1) the IEPA's guidance manual allows reimbursement for the reassembly of concrete; (2) the IEPA has adopted arbitrary and unpublished rules contrary to its statutory mandate to adopt reasonable administrative rules; (3) the IEPA is bound by representations it made to Cynthia Strube over the telephone; and (4) the IEPA improperly adopted an informal rule that concrete structures are not subject to reimbursement.

We reject all of the Strubes' claims. We find the Strubes did not prove that the replacement of their concrete driveway constituted a corrective action necessary to stop, eliminate, minimize or clean up

a release of petroleum. We affirm the Board because we agree with its determination that the Strubes' repaving expense was an unreimbursable restoration cost instead of a corrective action cost which is reimbursable.

The Strubes owned a gasoline station in Peoria. Beneath the surface were five underground storage tanks. All were empty. Three tanks were registered with the State Fire Marshall pursuant to the Gasoline Storage Act (Ill. Rev. Stat. 1991, ch. 127½, par. 156) making the owners eligible for partial reimbursement from the Underground Storage Tank Fund (the Fund) should there be a release of petroleum requiring "corrective action." Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18(a).

Corrective actions, with respect to underground storage tanks, are actions necessary to "stop, minimize, eliminate, or clean up a release of petroleum or its effects." Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18(e)(1)(C).

In 1990, the Strubes decided to sell their property. They arranged to have the underground storage tanks removed by an excavation company, which found the contaminated soil. The Strubes reported the problem to the Emergency Services and Disaster Agency (ESDA) and the IEPA in June 1990. Under the supervision of a licensed engineer, the Strubes' contractor removed the storage tanks and contaminated soil. Clean fill was then placed in the excavation.

The Strubes applied for reimbursement from the Fund for the costs of their corrective action. On December 6, 1990, the IEPA notified the Strubes that they were entitled to reimbursement for eligible corrective action costs, subject to a $15,000 deductible because all of the underground tanks had not been registered. Ill. Rev. Stat. 1991, ch. 111½, pars. 1022.18b(d)(3)(B)(ii), (d)(3)(G).

An engineering company later certified the Strubes' claim for reimbursement for corrective action costs. The claim covered expenses incurred from June 7, 1990, through January 25, 1991. The IEPA advised the Strubes on February 8, 1991, that no additional corrective action was necessary.

In the process of removing the contaminated soil, a concrete driveway was destroyed. The Strubes wanted another contractor to repave the driveway. Cynthia Strube telephoned the IEPA accounting staff several times to ensure that changing contractors would not jeopardize the eligibility of her corrective action claim. Mrs. Strube alleges that she was told by the IEPA accounting staff that a change of contractors would not affect her eligibility and to submit her claim for corrective action.

The driveway was repaved in July 1991. The Strubes interpreted the comments of the IEPA accounting staff to mean that the costs of repaving were reimbursable. Therefore, they submitted the $10,355 repaving cost for reimbursement. The IEPA, in its determination letter of September 19, 1991, allowed most of the Strubes' corrective action costs. However, it completely denied the Strubes' claim for repaving the driveway. (Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18b(d)(4).) The IEPA stated that the repaving expense was not a corrective action authorized by statute to "stop, minimize, eliminate, or clean up a release of petroleum or its effects." Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18(e)(1)(C).

On October 31, 1991, the Strubes filed with the Board a petition for review, contesting the IEPA determination. The Board denied the Strubes' reimbursement claim. The Strubes appeal the Board's decision pursuant to section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1041).

Initially, the Board raises a jurisdictional question as a result of the Strubes' failure to request a rehearing before the Board prior to filing the instant appeal. The Board alleges the Strubes' failure to request a rehearing constitutes a failure to exhaust administrative remedies. The Board cites as authority *Castenada v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437. In *Castenada*, the appeal was dismissed because the appellant had not sought a rehearing before the Illinois Human Rights Commission prior to filing his appeal.

The Strubes distinguish the Illinois Human Rights Commission procedure, in which a panel of only three Commissioners hears the case (Ill. Rev. Stat. 1991, ch. 68, par. 8A—103(E)), from the Board's procedure in this appeal. Under the Illinois Human Rights Act, rehearings are heard by the entire nine-member Commission. (Ill. Rev. Stat. 1991, ch. 68, par. 8A—103(F).) The *Castenada* court thus determined that an application for rehearing before the full Commission was mandatory under the version of the statute in effect at that time. *Castenada*, 132 Ill. 2d at 323, 547 N.E.2d at 447.

■ The Strubes contend that *Castenada* is not controlling here because the Board initially determines cases with the entire Board sitting *en banc*. Also, by the Board's own rules, its decisions are final and subject to direct appeal *without* rehearing, *which is optional*. (35 Ill. Adm. Code §101.302(b) (1985).) The Strubes finally note that were we to require a rehearing before the entire Board, which has already ruled on this issue, we would be wasting the time of both the petitioners and the Board. We agree with the Strubes'

reasoning and analysis. We find *Castenada* distinguishable. Accordingly, we hold that the Strubes have exhausted their administrative remedies. Therefore, the Board's May 21, 1992, decision is final and appealable.

The Strubes contend that the Board improperly applied the statutory definition of corrective action costs to their repaving expense. They argue that the IEPA's limited interpretation of corrective action costs should be rejected as inconsistent with the broad remedial language and purpose of the Fund.

"Corrective action" is defined as "an action to stop, minimize, eliminate, or clean up a release of petroleum or its effects as may be necessary or appropriate to protect human health and the environment. This includes, but is not limited to, release investigation, mitigation of fire and safety hazards, tank removal, soil remediation, hydrogeological investigations, free product removal, groundwater remediation and monitoring, exposure assessments, and the provision of alternate water supplies." Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18(e)(1)(C).

The Board disputes the Strubes' contention that the Fund has a broad remedial purpose. The Board states that the Fund's purposes are narrow and that the statutory definition of corrective action is specific. Accordingly, the Board asserts that restoration expenses such as repaving fall outside the statutory definition of corrective action. We agree.

The Board argues that a two-pronged analysis should be used to determine if an activity meets the definition of corrective action: (1) whether the costs are incurred as a result of action to stop, minimize, eliminate or clean up a petroleum release; and (2) whether the costs are the result of activities such as those listed in the statute.

Our review of an administrative agency decision extends to all questions of law and of fact presented by the record. (Ill. Rev. Stat. 1991, ch. 111½, par. 1041.) The findings and conclusions of the administrative agency on questions of fact are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) A reviewing court may not reweigh the evidence or substitute its judgment for that of the administrative agency. *Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633, 576 N.E.2d 532.

Although a reviewing court is not formally bound by the administrative agency's interpretation of law and should not uphold an erroneous interpretation, it should accord substantial weight and deference to the interpretation of a statute which the agency

administers and enforces. *City of Burbank v. Illinois State Labor Relations Board* (1989), 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1149; *Farmers State Bank*, 216 Ill. App. 3d at 640, 576 N.E.2d at 537; *National Environmental Services Corp. v. Pollution Control Board* (1991), 212 Ill. App. 3d 109, 112, 570 N.E.2d 1245, 1247.

■ We find that the Board has properly weighed the evidence and reasonably interpreted the statute in question. The Strubes have presented no evidence to show that repaving their lot helped stop, minimize, eliminate, or clean up a release of petroleum or its effects. While the Strubes' restoration actions might have benefited their property, we find nothing in the record to indicate that they served to protect human health or the environment. Accordingly, we find the Strubes' repaving expense was not a corrective action as defined by the statute.

The Strubes further contend they are entitled to reimbursement for their repaving costs based upon the IEPA's Guidance Manual for Leaking Underground Storage Tank Sites (Manual). The Strubes interpret the Manual to allow reimbursement for "reassembly" of concrete.

The language of the Manual states in pertinent part:

"The IEPA will only reimburse costs incurred by the owner/operator responsible for an UST release which are related to *** the study and remediation of the tank site. Costs unrelated to these areas will not be reimbursed.

A. Eligible Costs

The IEPA will only reimburse the owner/operator for the following work related to the study and/or remediation of an UST release if the work is deemed necessary by an Illinois Registered Professional Engineer, and the costs *** are reasonable:

\* \* \*

3. The dismantling and reassembling of structures\* costing less than $10,000 in response to a reported release, upon certification by the engineer that removal was necessary to perform remedial action.

\* \* \*

\*A structure means anything above grade, including but not limited to *** paving (concrete or asphalt), curbs—signs, buildings." Guidance Manual for Petroleum-Related LUST Cleanups in Illinois, Spring 1990, IEPA/LPC/9047, at 14—2 through 14—4.

We find the language of the Manual is neither clear nor definitive. An administrative rule should be construed together with the statute to make, if possible, an effectual piece of legislation which is in harmony with common sense and sound reason. (*People v. Johnson* (1977), 68 Ill. 2d 441, 448, 369 N.E.2d 898, 902; *Matthews v. Will County Department of Public Aid* (1987), 152 Ill. App. 3d 400, 402, 504 N.E.2d 529.) A guideline, like a rule, should be reasonable, within the agency's statutory authority, and adequately related to the purpose of the underlying act. *People ex. rel. Charles v. Telford* (1977), 48 Ill. App. 3d 928, 931, 363 N.E.2d 613.

■■ The Strubes interpret the Manual's language to mean that concrete repaving is reimbursable because above-grade concrete is included in the definition of "structure." The Strubes note the list of reimbursable activities includes "dismantling and reassembling of structures" when an engineer certifies that their removal was necessary to perform remedial action. The Strubes argue that "dismantling and reassembling of structures" should include repaving because reassembly of concrete is impractical and prohibitively expensive. Conversely, the IEPA believes that "dismantling and reassembly of structures" refers only to structures that can practically be dismantled and reassembled, such as canopies for weather protection. The IEPA argues that repaving concrete is *not* equivalent to the reassembly of concrete. We agree.

Administrative decisions must be upheld by the courts unless they are manifestly against the weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 76, 426 N.E.2d 877; *Allied Metal Co. v. Pollution Control Board* (1974), 22 Ill. App. 3d 823, 830, 318 N.E.2d 257; *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 257, 353 N.E.2d 316, 324.) The sole function of the reviewing court is to ascertain whether the agency's final decision is just and reasonable in light of the evidence. (*Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 269 N.E.2d 713.) We find the IEPA's analysis of its Manual to be reasonable in light of the evidence presented in the record. Furthermore, the IEPA's decision is not against the manifest weight of the evidence.

■■ The Strubes additionally argue that the IEPA must reimburse their repaving expense because its staff implicitly authorized reimbursement when it failed to inform Mrs. Strube that repaving was not reimbursable. Mrs. Strube testified the IEPA staff failed to tell her that concrete repaving was *not* reimbursable. IEPA staff testified that its reimbursement procedure never allows anyone to

authorize the reimbursement of a corrective action expense over the telephone. The Board found *no* credible evidence in the record to indicate that the IEPA represented to Mrs. Strube that the cost of repaving the concrete driveway would be reimbursed from the Fund. Instead, the Board found the evidence merely showed that the IEPA requested that Mrs. Strube submit her repaving costs for review. Again, we do not find the Board's determination to be against the manifest weight of the evidence.

■ Finally, the Strubes argue that the IEPA has adopted arbitrary and unpublished positions regarding eligible costs for reimbursement from the Fund, thus violating principles of due process. The IEPA is authorized "to adopt reasonable and necessary rules for the administration of this Section." (Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18b(f).) However, the statute does *not* require the IEPA to adopt rules to cover every conceivable claim for reimbursement. The IEPA is only mandated to have reasonable and necessary rules. The Strubes have failed to show that the IEPA's determination was arbitrary or unreasonable. The IEPA and the Board simply applied the statutory definition of corrective action to the facts of this case. We find no principles of due process violated here. Our supreme court has held that the hearing before the Board, after the IEPA denies a claim, provides the safeguards of due process. *Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 503 N.E.2d 343.

For the reasons indicated, we affirm the decision of the Illinois Pollution Control Board.

Affirmed.

BARRY and LYTTON, JJ., concur.