GRIGOLEIT COMPANY, Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fourth District   No. 4—92—0029

Argued January 20, 1993.—Opinion filed May 6, 1993.

STEIGMANN, P.J., specially concurring.

Thomas E. Little, of Booth & Little, and A. James Shafter (argued), James E. Peckert, Catherine L. Mannweiler, and Gregory Q. Hill, all of Kehart, Shafter, Hughes & Webber, P.C., both of Decatur, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Mark E. Wilson, Assistant Attorney General (argued), of Chicago, of counsel), for respondent Illinois Environmental Protection Agency.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Deborah Stonich, Special Assistant Attorney General (argued), of Chicago, of counsel), for respondent Pollution Control Board.

JUSTICE GREEN delivered the opinion of the court:

Petitioner Grigoleit Company, a corporation (Grigoleit), takes administrative review from an order of respondent Illinois Pollution Control Board (Board) entered December 6, 1991. (*Grigoleit Co. v. Illinois Environmental Protection Agency* (Dec. 6, 1991), ___ Ill. PCB Op. 89—184.) The order was mostly favorable to Grigoleit as it reversed the ruling of respondent Illinois Environmental Protection Agency (Agency) denying for the second time Grigoleit's application for renewal of an operating permit and ordered that the permit be issued. However, Grigoleit had requested that the Agency be sanctioned in various ways. The Board ruled that the requirement for the issuance of a renewal permit was a sanction and refused to impose further sanctions. Grigoleit has filed for judicial review by this

court pursuant to section 41 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1991, ch. 111½, par. 1041). We affirm all aspects of the order except in regard to the imposition of sanctions. We remand with directions to impose an additional sanction on the Agency.

The Agency maintains the Board's December 6, 1991, order was not final because (1) no request for a rehearing was made by Grigoleit, and (2) the remand to it prevented the order from being final. Accordingly, as section 41 of the Act provides for judicial review only from final administrative orders, the Agency maintains we do not have jurisdiction. The Board and Grigoleit contend that we do have jurisdiction. We agree we have jurisdiction.

The Board maintains its order should be affirmed in its entirety. The Agency has not cross-appealed, and Grigoleit's only contention on appeal is that greater sanctions should have been imposed on the Agency. A major portion of Grigoleit's theory of the case is that it was automatically entitled to the renewal of the permit under the provision of section 39(a) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a)) because the Agency was tardy in ruling on its request. The Agency and the Board strongly disagree with Grigoleit's contention in this regard. For reasons we explain, we will not need to pass upon this question.

This case began on July 12, 1989, when Grigoleit placed in the United States mail, as certified mail, and addressed to the Agency, the instant application for renewal of its permit to operate a decorative metal fabrication plant. The Agency denied the request by a letter to Grigoleit dated and mailed October 11, 1989. On November 13, 1989, Grigoleit filed with the Board an administrative appeal of the permit denial. On November 29, 1990, the Board entered an order finding two of the three grounds upon which the denial by the Agency was based were not substantiated. (*Grigoleit Co. v. Illinois Environmental Protection Agency* (Nov. 29, 1990), ___ Ill. PCB No. 89—184.) That order then remanded the matter to the Agency to reconsider the other ground for the denial.

After the matter was remanded to the Agency, it sent a letter to Grigoleit on January 10, 1991, requesting information not only as to the issue upon which the Board order of November 29, 1990, directed further consideration but also upon other matters which the Agency deemed appropriate in regard to whether the permit should be renewed. Grigoleit objected to the latter, disputes arose as to the discovery and, eventually, the Agency again denied the permit on April 25, 1991. A request for sanctions was filed by Grigoleit on

May 30, 1991, and apparently treated by the Board as an appeal from the order of denial as well as a request for sanctions. The Board denied some sanctions requested but declared the two previous permit denials listed above null and void and remanded to the Agency with directions to consider only the issue set forth in the original order of remand. (*Grigoleit Co. v. Illinois Environmental Protection Agency* (June 20, 1991), ____ Ill. PCB No. 89—184.) Further disputes arose. Grigoleit again requested sanctions on October 2, 1991, and the Board thereafter entered the December 6, 1991, order from which this administrative review has been taken.

We consider first the issue of our jurisdiction. The most complicated aspect of that matter is the question of whether Grigoleit was required to request a rehearing so as to obtain a final order and thereby preserve its rights of administrative review. Section 3—101 of the Code of Civil Procedure (Code) states in part as follows:

> "In all cases in which a statute or a rule of the administrative agency *requires* or *permits* an application for a rehearing or other method of administrative review to be filed within a specified time (as distinguished from a statute which permits the application for rehearing or administrative review to be filed at any time before judgment by the administrative agency against the applicant or within a specified time after the entry of such judgment), *and an application for such rehearing* or review *is made, no administrative decision of such agency shall be final* as to the party applying therefor until such rehearing or review is had or denied." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 3—101.

Sections 101.246 and 101.300 of title 35 of the Illinois Administrative Code have been enacted by the Board pursuant to authority under section 5(d) of the Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1005(d)) and provide: "Any motion for reconsideration or modification of a final Board order shall be filed within 35 days of the adoption of the order" (35 Ill. Adm. Code §101.246(a) (1991)); and "[m]otions for reconsideration or modification of a final Board order shall be filed within 35 days of the order, pursuant to Section 101.246" (35 Ill. Adm. Code §101.300 (1991)). Thus, rules of the Board "permit" filing of a petition for rehearing of a final order of the Board but no "application for such rehearing" was made. This court has held that under these circumstances, the quoted portions of section 3—101 of the Code do not render an administrative order unappealable for failure of the party seeking review to ask for a rehearing.

*City of Springfield v. Carter* (1989), 184 Ill. App. 3d 1, 540 N.E.2d 536; *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230.

The Agency maintains that the foregoing decisions of the court have been overruled by *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437. There, in a proceeding before the Human Rights Commission (Commission), an administrative law judge held a hearing on a complaint brought by the Commission against an employer charging discrimination in employment. The judge found no discrimination had occurred and recommended dismissal of the complaint. The employee was then entitled to a hearing before a three-member panel of the Commission. (See Ill. Rev. Stat. 1987, ch. 68, pars. 8—102(G), 8—107(E).) Such a panel heard the employee's claim and ruled against him. Section 8—107(F) of the Illinois Human Rights Act (Human Rights Act) then permitted the employee to apply for a rehearing before the whole Commission upon a request made within 30 days of service of the order of the three-member panel. (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(F).) No request for such a rehearing was made.

The *Castaneda* court affirmed a decision of the appellate court (*Castaneda v. Human Rights Comm'n* (1988), 175 Ill. App. 3d 1085, 530 N.E.2d 1005) dismissing the petition of the claimant for judicial review of the decision of the three-member panel of the Commission. The supreme court decision was based upon the failure of the claimant to seek rehearing before the Commission. The supreme court stated: "The sole issue before this court is whether petitioners seeking judicial review of decisions by three-member panels of the *** Commission must seek an *en bloc* rehearing before the Commission in order to exhaust their administrative remedies ***." (*Castaneda*, 132 Ill. 2d at 308, 547 N.E.2d at 438-39.) The supreme court based its decision upon section 3—101 of the Code and spoke, to some extent, as to its general application but, as the foregoing language would indicate, did seem to limit its interpretation of section 3—101 of the Code to the circumstances where judicial review is sought from three-member panels of the Commission without a rehearing being sought.

The *Castaneda* court did disagree with the decision of this court in *Carter* which also involved the question of judicial review of a decision of a three-member panel of the Commission in regard to a claim of discrimination under the Human Rights Act. The supreme court noted that the *Carter* decision was based upon an interpretation of section 3—101 of the Code which emphasized that *both* the existence of a statutory right to rehearing upon request within a

specified time *and an actual filing of a petition* for rehearing were necessary to prevent an otherwise final decision of an administrative agency from being subject to judicial review. The supreme court held that portion of section 3—101 was ambiguous because of "basic policies underlying the doctrine" of exhausting remedies, a major one being that the rehearing would be before the entire Commission, which could "consider the facts of the cause more thoroughly than a three-member panel." *Castaneda*, 132 Ill. 2d at 321, 547 N.E.2d at 445.

The *Castaneda* court did indicate that a policy of requiring requests for rehearings to administrative agencies, which the agency could grant or deny, before judicial review can be obtained promotes the public policies by (1) obtaining maximum use of the agency's expertise, and (2) limiting the matters that ultimately burden courts. However, this was stated in the context of a discussion of the desirability of having a full Commission rather than a three-member panel sitting upon rehearing. In explaining the difference between the rationale of the Code in not requiring a post-judgment petition as a condition of preserving issues for review in a nonjury civil case (see Ill. Rev. Stat. 1991, ch. 110, par. 2—1203) and the rationale of section 3—101 of the Code, the supreme court explained that in such civil cases the rehearing would "typically be before the very same judge or judges" whereas a rehearing before the Commission would include six additional commissioners who did not sit in the earlier determination. *Castaneda*, 132 Ill. 2d at 326, 547 N.E.2d at 447.

■■ Because of the statement by the *Castaneda* court that "[t]he sole issue before [it was] whether petitioners seeking judicial review of decisions by three-member panels of the *** Commission must seek an *en bloc* rehearing before the Commission in order to exhaust their administrative remedies" (*Castaneda*, 132 Ill. 2d at 308, 547 N.E.2d at 438-39), we conclude that precedent does not bind us here where the decision from which judicial review is sought was made by the whole Board. Recently, in *Strube v. Pollution Control Board* (1993), 242 Ill. App. 3d 822, the Third District Appellate Court agreed with our conclusion that *Castaneda* does not apply to petitions for review from the Pollution Control Board and that a petition for rehearing by the Board is not necessary to perfect a petition for judicial review by the appellate court. Grigoleit was not required to file a petition for rehearing from the December 6, 1991, order to obtain judicial review.

■ We now turn to the other question concerning our jurisdiction, namely, the issue of whether the December 6, 1991, order has finality. We reject the Agency's assertion that it lacked finality because it permits the Agency the discretion as to whether to grant Grigoleit a renewal permit and as to the conditions of such a permit. In the decretal portion of the order the Board states that it "directs the Agency to issue Grigoleit's operating permit." The order then concludes by explaining the appeal procedures from "final orders" of the Board. Prior to those statements the order explained that the Agency had given no valid reason why a permit should not issue.

The clear direction of the order is for the Agency to perform the ministerial task of issuing the permit without any conditions other than those automatically imposed by law. In a civil proceeding when a higher tribunal remands to a lower tribunal merely for the performance of a ministerial function, that order is final for the purpose of appeal and the same rule applies on judicial review of an administrative decision. *Wilkey v. Illinois Racing Board* (1983), 96 Ill. 2d 245, 249-50, 449 N.E.2d 843, 844-45; *Rauschenberger v. Board of Education, Heritage Community Unit School District No. 8* (1991), 223 Ill. App. 3d 412, 416-17, 584 N.E.2d 1050, 1054.

Much of the dispute concerning the finality of the December 6, 1991, order and, indeed, the merits of the case arises from the Agency's conception of its statutory function in granting operating permits. Section 39(a) of the Act states that "[i]n granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of [the] Act, and as are not inconsistent with the regulations promulgated by the Board," and that the Agency has a "duty" to issue a permit only upon "proof by the applicant that the facility *** will not cause a violation of" the Act or regulations thereunder. Ill. Rev. Stat. 1991, ch. 111½, par. 1039(a).

The Agency maintains the described duties placed upon it and the discretion it has in conditioning permits (see *Browning-Ferris Industries of Illinois, Inc. v. Pollution Control Board* (1989), 179 Ill. App. 3d 598, 534 N.E.2d 616) remain even after its decision in regard to a permit application has been reversed by the Board and the cause remanded to it with directions to issue the requested permit. This position is untenable. It is not supported by any citation to principles of administrative law or by analogy to procedures in matters before courts.

Only the Agency can actually issue an operating permit of the type involved here. If the Agency's theory of its powers and duties

in this respect is carried to its logical conclusion, the Agency could permanently thwart a Board determination that a party is entitled to a particular type of permit by continuing upon each remand, after appeal to the Board, to impose conditions upon the issuance of a permit to which the Board deems an applicant to be entitled without condition.

The Agency also seeks to have us consider matters which it maintains have taken place since the December 6, 1991, order on judicial review. The Agency states it placed certain conditions upon a permit which it issued upon the last remand and that Grigoleit has taken a further administrative review of that order to the Board. The Agency cites this information as a reason for us to hold that the December 6, 1991, order was not final. The information as to matters occurring after the order on appeal is not properly before us and will not be considered. However, to some extent, the possible existence of such a situation does illustrate the problems which would arise from the operation of the Agency's interpretation of its function. The grant of a permit under these circumstances only prevents prosecution for failure to possess a permit; the permit is not a grant of any right to violate obligations otherwise imposed by law.

After deciding we have jurisdiction but before we consider the issues upon which we decide the case, we deem appropriate to discuss a major prong of Grigoleit's theory of recovery, the validity of which we need not decide. It arises from the portion of section 39(a) of the Act which states that "[i]f there is no final action by the Agency within 90 days after the *filing* of the application for permit, the applicant may deem the permit issued" (emphasis added) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a)). Grigoleit maintains that the action of the Agency in denying its application on October 11, 1989, was untimely. The record showed that it made a proper mailing of the application on July 13, 1989, which was the 91st day before the decision to deny was issued.

Grigoleit contends its mailing of the application on July 13, 1989, should be considered a "filing" within the meaning of section 39(a) of the Act even though the Act does not further define the word "filing." Grigoleit relies upon section 1.25(1) of the Statute on Statutes, which states as follows:

> "Unless An Act otherwise specifically provides, any writing of any kind or description required or authorized to be filed with, and any payment of any kind or description required or

authorized to be paid to, the State or any political subdivision thereof, by the laws of this State:

(1) if transmitted through the United States mail, shall be deemed filed with or received by the State or political subdivision on the date shown by the post office cancellation mark stamped upon the envelope or other wrapper containing it." Ill. Rev. Stat. 1991, ch. 1, par. 1026(1).

The significance to be given to the foregoing is tempered by section 1 of the Statute on Statutes, which provides:

"In the construction of statutes, this Act shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly *or repugnant to the context of the statute.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 1, par. 1001.

The "filed as mailed" rule was applied by the supreme court in regard to whether an applicant made a timely appeal to the Board from an Agency denial of a supplemental permit in order to uphold the timeliness of filing in *M.I.G. Investments, Inc. v. Environmental Protection Agency* (1988), 122 Ill. 2d 392, 523 N.E.2d 1. However, the question of whether a mailbox filing theory is appropriate to protect a party from default when a document is timely mailed but tardily delivered differs from the question of whether a party who must respond to the document can be defaulted when the document to which it must respond is tardily delivered. If the "filed as mailed" rule is applied to the time frame for issuing operating permits, a timely filed permit request could evolve into a permit by lapse of time even though the application never reached the Agency or did so in such a short span that little time would be available to act upon it.

■ We need not decide the applicability of the "filed as mailed" rule because the permit Grigoleit is entitled to is the same as the one which would be ordered issued if the Agency's ruling had been tardy. As we need not decide this question, we need not respond to the Agency's contention that the issue of whether Grigoleit was entitled to a permit for that reason was in some way eliminated from consideration by being merged into the December 6, 1991, order from which judicial review has been taken. However, the fact that we determine Grigoleit is entitled to a permit without specific conditions does not render its request for review moot on the grounds Grigoleit received all the relief it requested from the Board. (See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d

382, 457 N.E.2d 9.) Grigoleit did not receive the benefit of all sanctions it requested.

Finally, we turn our attention to the question of sanctions. Grigoleit's request for sanctions was based upon the Agency's repeated refusal to follow the Board's mandate upon remand. Grigoleit asked that the Board pay its attorney fees and require the Agency to dismiss a pending land pollution violation complaint. The Board refused these sanctions but deemed its requirement for issuance of a renewed permit without conditions to be a sanction. Grigoleit contends that was no sanction because the Board had determined Grigoleit was entitled to that on the basis of the proof. Our interpretation of the record is in agreement with that of Grigoleit in that respect. Section 101.280(a)(7) of the Board's rules includes as a sanction which can be imposed against parties for "refus[al] to comply with *** any, order entered by the Board," an order "[t]hat the offending person pay the amount of reasonable expenses incurred in obtaining an order pursuant to this Section." (35 Ill. Adm. Code §101.280(a)(7) (1991).) The Board has broad discretion in determining whether to impose such a sanction. (*Environmental Protection Agency v. Celotex Corp.* (1988), 168 Ill. App. 3d 592, 597, 522 N.E.2d 888, 891.) Examination of the totality of the actions by the Agency which took place here leads us to conclude that the Board did abuse its discretion in not imposing more severe sanctions against the Agency.

On October 11, 1989, the Agency issued a letter listing three reasons why it was denying Grigoleit's request for permit renewal. One ground was that Grigoleit had denied Agency personnel access to its operations. The second was that Grigoleit's application failed to provide certain proof in regard to Grigoleit's compliance with certain Agency rules. The third was that an outstanding land pollution violation existed. On appeal from this ruling, the Board issued an order on November 29, 1990, which found that the Agency's first and third grounds of denial were not proper and remanded for reconsideration of the second ground. (*Grigoleit Co. v. Illinois Environmental Protection Agency* (Nov. 29, 1990), ___ Ill. PCB No. 89—184.) On remand, the Agency sought information from Grigoleit which concerned not only the issue which it was directed to reconsider but also that concerning Grigoleit's alleged land violation. Grigoleit responded by providing information concerning the issue to be considered but refused to give other information. On April 25, 1991, the Agency again denied renewal, maintaining the information provided on both issues was inadequate.

After the second permit denial, Grigoleit filed a petition with the Board for sanctions and other relief because of the failure of the Agency to follow Board mandates. On June 20, 1991, the Board found the Agency had exceeded the scope of its authority and remanded to the Agency "for the sole purpose of eliciting the information" that concerned Grigoleit's compliance with certain Agency rules. (*Grigoleit Co. v. Illinois Environmental Protection Agency* (June 20, 1991), ___ Ill. PCB No. 89—184.) As sanctions, the Board declared the Agency's January 10, 1991, letter and the April 25, 1991, letter and permit denial null and void. The Board refused Grigoleit's request that (1) the Agency be barred from filing further pleading, and (2) the Agency reimburse Grigoleit for its costs in regard to its latest motion. *Grigoleit Co. v. Illinois Environmental Protection Agency* (June 20, 1991), ___ Ill. PCB No. 89—184.

On the second remand, the Agency persisted in exceeding the scope of the remand by again requesting from Grigoleit, in a letter dated July 29, 1991, not only information in regard to Grigoleit's compliance with the various rules upon which information had been previously requested but also information concerning its compliance with other regulations not previously raised and not referred to in the two orders of remand. On October 2, 1991, the Agency then again denied Grigoleit a permit based upon Grigoleit's lack of proof as to both the matters set forth in the remand orders and also the new grounds which the Agency had interjected. This ruling gave rise to the instant petition for sanctions and the Board's order which is the subject of this judicial review.

■ As has been shown, the Agency continued to exceed the scope of its mandate after being directed by the Board not to do so. The apparent reason for this was the Agency's contention that the provisions of section 39(a) of the Act, which set forth grounds upon which permits should be issued, authorized it to take a fresh approach to the grant of a permit on a remand from an appeal of a previous denial regardless of the Board's mandate in that respect. The record shows that the Board had rejected that theory and as we have indicated, we deem it without merit. Once the Board had ruled against its use of this theory, proper procedure for contesting that ruling requires that it follow the mandate of the Board and then raise the issue in an ultimate appeal of a final order. The procedure of continued thwarting of the Board's mandates, which mandates turned out to be proper, caused needless delay and expense to the Board and to Grigoleit.

While we recognize the great discretion granted the Board in ruling upon sanctions, we are compelled to conclude that granting Grigoleit a renewal permit which it was apparently entitled to anyway, was, as a matter of law, an insufficient sanction for the Agency's unnecessary stubborn defiance of the Board. We fully agree with the Board's rejection of Grigoleit's request that a collateral complaint against Grigoleit should be dismissed as a sanction. However, Grigoleit is entitled to some expense reimbursement as a sanction.

Accordingly, we affirm all aspects of the December 6, 1992, Board order on judicial review except to the extent it refuses an award of attorney fees. We reverse that portion of the order and remand to the Board with directions to award Grigoleit attorney fees in regard to the proceeding after the second remand.

Affirmed in part, reversed in part, and remanded with directions.

COOK, J., concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I fully agree with the majority opinion, I write specially because I fear that it does not fully convey the outrageous conduct of the Agency in this case. The record before us demonstrates that the Agency has arrogated to itself a role in which it—and it alone—can be trusted with the important task of protecting our environment. (See *States Land Improvement Corp. v. Environmental Protection Agency* (1992), 231 Ill. App. 3d 842, 849, 596 N.E.2d 1164, 1168 (Steigmann, J., specially concurring).) The Agency's position in this case essentially is that not even the Board can be trusted when it comes to protecting the environment. In the Agency's view, only it possesses that moral high ground, and normal legal rules and procedures be damned.

This case also suggests that the Agency views the Board as gutless and ineffective. Although I share the Agency's view of the Board, I view the Board in that way because it tolerates unbelievably contumacious conduct from the Agency with nary a whimper. Indeed, as I observed at oral argument, I do not know what is more shocking: the Board's spinelessness or the Agency's lawlessness.

In my two decades' experience in the criminal law, I have occasionally encountered an attitude among law enforcement officers

similar to that displayed by the Agency in this case. In a criminal context, the out-of-control police officer muses with himself essentially as follows:

"*I know* that the defendant really is guilty and that his presence on the streets endangers society. Prosecutors are overworked and negligent, judges are confused and lazy (if not corrupt), and defense attorneys are just plain sleazy and will concoct lies in order to help their clients beat the rap. Thus, it's morally O.K. for me to 'tilt the scales slightly' by how I handle this case [usually offering perjurious testimony regarding what defendant supposedly said or what supposedly was found on his person] because that is the only way I can ensure that 'real justice' will be done."

I have set forth the above rationale in blunt, ugly terms because doing so best conveys how renegade cops think and why they are so dangerous. In this case, a renegade governmental agency—an agency empowered and entrusted by the General Assembly with the important task of protecting our environment—has run amok and, by its lawlessness, has demeaned the important task the State of Illinois has given it. Just as the renegade cop who commits perjury because of his distorted belief that that is the only way justice can be done perverts the criminal justice system and ensures precisely the opposite of what he hoped to achieve, so governmental agencies that view themselves above the law tarnish the good that they do, diminish public confidence, and deflect attention from their good works.

I have used some strong language in describing the Agency's conduct, but the reader ought not have to rely upon my assessment of the record. Instead, the Agency's conduct is best revealed by quoting what *it has said* to this court in its oral argument and appellate briefs.

At oral argument, the Agency's lawyer was asked the following questions and gave the following responses:

"[Appellate Judge]: [I]s the relationship [between the Board and the Agency] essentially the same [as that between a court and prosecutor] with regard to the fact that the Agency is stuck with the rulings of the Board, just like prosecutors are stuck with the rulings of the court, whether the prosecutor or the Agency likes them or not?

[Agency Lawyer]: Your Honor, the Agency believes that it is required to abide by its statutes, and if the Board orders the Agency to do something which is not in compliance with

the statute, then it [(apparently, the Board)] is exceeding its scope under its own provisions of the statute.

[Appellate Judge]: So the answer to that question is, 'No?'

[Agency Lawyer]: The answer is: on occasion the Board exceeds its authority; and, yes, it is not akin to a prosecutor.

[Appellate Judge]: Within this system of law, counsel, who decides these matters? The individual members of the Agency, the Agency head, the Board, the Governor? Who decides this stuff? *** If you adjudicate matters before the Board pursuant to Illinois law, and they make a ruling that you don't like, you can just simply say, as you do several times in your brief, 'We *strongly* disagree and *strongly* adhere to our earlier views,' and just kind of blow them off, is that it?

[Agency Lawyer]: Well, that's why you have judicial review.

[Appellate Judge]: *Pending* judicial review.

[Agency Lawyer]: Pending judicial review?

[Appellate Judge]: *Pending* judicial review. The trial judge rules that the evidence is not admissible, and the prosecutor wants to appeal. Pending that, is that question still up for doubt, or what?

[Agency Lawyer]: Uh, I agree your Honor, that ... the Agency—

[Appellate Judge]: In fact, you never appealed anything here, did you?

[Agency Lawyer]: That's correct. That's correct.

[Appellate Judge]: So, you're the prosecutor who says, 'I don't like that ruling, and I am not going to abide by it, but we're not going to appeal.'

[Agency Lawyer]: Well, that ... that's true. They ... they elected not to appeal in this case.

[Appellate Judge]: Tell me why this isn't just an example of, frankly, lawlessness by the Agency, counsel.

[Agency Lawyer]: Well your Honor, now, specifically, you are referring to the ... the four sanctions motions.

[Appellate Judge]: I am referring to pretty much everything the Agency has done and said in this case.

[Agency Lawyer]: The ...

[Appellate Judge]: You can take your pick on the lawless aspects of Agency behavior.

[Agency Lawyer]: *** [Regarding the discovery dispute,] the Agency believed that certain information was privileged and, if I recall, frankly, it involved information in deposition and in introduction documents ...

[Appellate Judge]: What was that theory again—'predecisional deliberative privilege'—is that right?

[Agency Lawyer]: Uh, I believe that is what they call it.

[Appellate Judge]: Does that [theory] exist anywhere outside of the front door of the Agency? Weinstein on Evidence, Graham on Evidence, any cases, anywhere?

[Agency Lawyer]: I ... don't ... can't cite you anything, your Honor. ***

[Appellate Judge]: I could understand your argument if it had just happened once, if the Board had just sent the case back to you once. But they had to send it back two times, and maybe even a third time. How can you justify that?

[Agency Lawyer]: I would justify it the way the dissent justified it, your Honor, the two Board members who dissented.

[Appellate Judge]: But the dissent is not the opinion. Don't you have to abide by the decision of Board. When the Board says 'Do this,' you can't just thumb your nose at the Board and do something else.

[Agency Lawyer]: The Agency, and the way the Agency is set up, is to review these permit applications and to issue permits based on what they know about the source.

[Appellate Judge]: Counsel, what happens if there is a two-to-one decision out of this court ***? What happens when we issue an order from this court [and] our mandate to the Agency is: 'Issue the permit.' Will you say 'No, hey, it was two to one; and it was a *brilliant* dissent agreeing with our position. We are not going to do it.' Any problems with that?

[Agency Lawyer]: Yes, I have a problem with that.

[Appellate Judge]: What is the difference between that case and what happened here?

[Agency Lawyer]: The difference is that this is a court of law ordering ... issuing an order that must be followed; [but] those two agencies [(apparently, the Board and the Agency)] are part and parcel of the same administrative scheme.

[Appellate Judge]: You mean the Board's orders don't have to be followed by the Agency?

[Agency Lawyer]: The Board has to, *itself*, respect the law and the final order ...

[Appellate Judge]: [Do] the Board's orders have to be followed by the Agency?

[Agency Lawyer]: Uh, yes, and it can be appealed. A party can appeal a final Board order and get review.

[Appellate Judge]: Well, then go back to [the earlier] question. You're ordered on multiple occasions, to *** issue a permit, and you refused to do so. Because of the dissent? That was the best you could do in response to that question? Do you have some other excuse that you want to tell me about?

[Agency Lawyer]: The dissent shows that this was a reasonable dispute among the parties.

[Appellate Judge]: It was until the Board resolved it.

[Agency Lawyer]: *** [T]he majority of the Board was letting Grigoleit supplement the record as they went along, but [at the same time] was holding the Agency to its initial prehearing record. That was the problem. See, the Agency gets stuck in these situations....

* * *

[Agency Lawyer]: As I understand it, your Honor, the way the Agency is set up, is that the permitting people are *compelled* *** to look at the situation at the source, and, *** with what we know at this time, [to decide whether to] give them a permit with these sorts of conditions.

* * *

[Appellate Judge]: But [the] second time the case went to the Board, the Board disagreed. The Board said, 'You have exceeded the scope of our remand. Don't ask for any more information. Just go ahead with what you have ***.' For a second time, you said, 'No.' You went ahead and exceeded the requirements of the Board. [Isn't the Board] entitled to decide that? What gives you the right to say, 'Board, you are wrong. We are not going to appeal; we are just going to do what we think we ought to do.'

[Agency Lawyer]: Well, I'm not so sure that the Agency could have appealed because there was ... because there wasn't a final order.

[Appellate Judge]: Why wasn't that final? It said 'Issue the permit. Forget about adding all this other stuff on.' But you didn't issue the permit without forgetting about adding this [other] stuff. Why didn't you appeal?

[Agency Lawyer]: The reason is that the Agency cannot appeal an order that says 'Issue a permit.' Nor could anyone else because those orders refer the Agency to section 39(a) of the statute [(Ill. Rev. Stat. 1991, ch. 111½, par. 1039(a))]. And that statute says, 'The Agency in deciding whether to issue a permit must consider conditions,' and conditions require discretion.

[Appellate Judge]: So, then, the order of the Board is no different from an order of this court. If we issue that order and refer to section 39 then, by God, those guys [at the Agency]—guardians of everything that is safe and pure in our environment—have to make sure our order, our mandate, meets with their approval before they're going to comply with it. Isn't that right?

[Agency Lawyer]: No, because this court can remand cases ... it can issue an order of ... it can issue an order remanding a case.

[Appellate Judge]: Our orders have merit or have power and authority, and the orders of the Board don't?

[Agency Lawyer]: No, if this court orders a remand to go do some further act, that, by law, that is an appealable order.

[Appellate Judge]: How about, 'We reverse the Agency's denial of Grigoleit's application for an operating permit, and order the Agency to issue it.' How's that sound?

[Agency Lawyer]: You can do that, yes.

[Appellate Judge]: And would the Agency do it?

[Agency Lawyer]: Yes, it most certainly would.

[Appellate Judge]: But not for the Board's order, saying the same thing. I'm quoting from the Board's order, by the way.

[Agency Lawyer]: I recognize that your Honor ***.

[Appellate Judge]: I want you to explain the difference between the orders of the Board and *their* authority, and the orders of this court and *our* authority. I always thought they were the same.

[Agency Lawyer]: They are not exactly the same, because the Board's orders are only final if they are final under the administrative review law.

[Appellate Judge]: You mean, 'We only have to follow them if they are *final*.' If they are not final, you don't have to follow them?

[Agency Lawyer]: Well—

[Appellate Judge]: You keep promising that you are going to abide by the mandates of this court, but your track record of following mandates of the Board isn't too good. I want to know, how do you draw that distinction? Why are their orders, with the same effect as ours, not being followed?

[Agency Lawyer]: Because the Board ... I sense from your previous questions [that] you, at this point you are not going to accept this response. But ... the reason the Agency did what it did is because it believes it has no statutory authority; and the crux, the *difference*, between ... orders from your court and orders from the Board is that orders from the Board come from the same statute and they are part and parcel of the same regulatory scheme.

[Appellate Judge]: You don't have to obey them?

[Agency Lawyer]: We have ... [The Agency] should obey the orders unless they exceed the scope of the Board's authority. And once ....

[Appellate Judge]: *** Your position then is, as a matter of law, the Board does not have authority to order you to issue a permit without [your] making a further investigation as to the situation at that time.

* * *

[Agency Lawyer]: The answer is yes.

[Appellate Judge]: [In other words,] [t]he Board is without jurisdiction, so to speak, without authority, *** [to tell] you to issue a permit without making a further investigation[. Such an order] is void as beyond [the Board's] power.

[Agency Lawyer]: Your Honor, the Agency has never issued, as far as I know ...

[Appellate Judge]: Did you answer his question, counsel?

[Agency Lawyer]: The answer is yes. The answer is yes to that question, your Honor, as far as I know.

[Appellate Judge]: What authority do you have for that, because I didn't understand where you were coming from until now.

[Agency Lawyer]: The authority is section 39(a) of the statute—the only statutory grant in all of Illinois law, as far as I know, that permits the Agency to issue a permit—and that is what the Board ordered them to do: issue a permit.

[Appellate Judge]: We are talking about the power of the Board, not the power of the Agency.

[Agency Lawyer]: Right. The power of the Agency to do what the Board ordered the Agency to do comes from section 39(a); and that section says, 'In granting a permit, it must consider conditions.' And considering conditions requires *** the agency to use technical staff....

[Appellate Judge]: What you say is that the Board cannot order you to issue a permit without conditions, without exercising your discretion regarding conditions.

[Agency Lawyer]: Precisely.

[Appellate Judge]: Wouldn't that be the same as far as we are concerned under your theory?

[Appellate Judge]: The statute makes no exceptions. Why isn't it the same thing for this court?

[Agency Lawyer]: Your Honor, if ... if you ordered ... the Board ... [or] ordered the remand saying 'Agency go issue without ... issue a permit without conditions,' then we believe that ... respectfully, I have to say that the Agency would take the position that you misapplied the statute and would seek a further appeal. But, I mean, that is a legal issue; and we say that that is an incorrect application of the statute.

[Appellate Judge]: The supreme court takes the case; they agree with us; now what?

[Agency Lawyer]: Now the law has changed, and we would have to follow it. I mean, our position would be necessarily void.

[Appellate Judge]: The supreme court doesn't take the case; are you going to accept our mandate?

[Agency Lawyer]: Yes.

[Appellate Judge]: But the statute hasn't changed. The statute makes no distinction between orders of this court in administrative review and orders of the Board, does it?

[Agency Lawyer]: But, I mean, your opinion would be precedential value and would amend [sic] the statute.

[Appellate Judge]: The Board's orders are without ...

[Agency Lawyer]: *** That's right, without precedential effect. They are a part of the same administrative scheme.

[Appellate Judge]: Precedent has to do with following it for some *other* case; it has nothing to do with the authority in any *particular* case, [does] it?

[Appellate Judge]: Counsel, I must say, for an attorney on behalf of a litigant who is arguing that the Board properly imposed the minimal sanctions it did, the posture you are

taking before this court is hardly one of repentance for the errors of the ways of the Agency. It sounds to me like it is more, 'In your face.'

[Agency Lawyer]: Well, I don't intend it like that your Honor. *** I'm trying to explain why the Agency did what it did.

[Appellate Judge]: [In other words, it's] the higher moral ground, [because] the Board *** can't be trusted to understand what is really at stake here.

[Agency Lawyer]: There is an ongoing dispute between the Agency and the Board on the scope of each agency's power under their common statute.

[Appellate Judge]: Under your theory, there can't be an appeal if you refuse to issue a permit. Is that right? If the Board says to you, 'You were wrong, issue the permit,' and you refuse to do it, there can be no appeal because you have not exercised your discretion regarding conditions?

[Agency Lawyer]: Oh, that is absolutely right; because there is no ... the only ... under section 41 of the Act [(Ill. Rev. Stat. 1991, ch. 111½, par. 1041)], the only final Board order ... the only final order is from the Board.

[Appellate Judge]: So all you have to do to prevent appeals is, when the Board tells you to issue a permit, just say 'No.' And then there can be no appeal because you have not exercised your discretion regarding conditions.

[Agency Lawyer]: *** Only the Board can issue a final and appealable order under section 41 of the Act. And ... you know ... the Agency does not mean to completely disregard the Board orders and all....

[Appellate Judge]: Just those they disagree with.

[Agency Lawyer]: Only when .... The Agency feels that it is required by the statute to protect the public interest, to abide ... do in good faith what its employees in its different departments are required to do.

[Appellate Judge]: Maybe it's time, counsel, for a *definitive* statement putting the Agency in its place in [this statutory] scheme, and telling it that it follows the directions of the Board because it is the Board. Do you suppose [it] is about time for that?

[Agency Lawyer]: Well, your Honor it is up to you; and I would say that this is not the kind of case where some strong sanction is necessary, because there was no bad faith on the

part of the Agency here. There was only an attempt to follow the statute." (Emphasis in original.)

Eight days after the above oral argument, this court received a truly remarkable document, literally unprecedented as far as anyone connected with this court can recall. The document was entitled, "The Illinois Environmental Protection Agency's Motion To Clarify Statements Made At Oral Argument." In that motion, the Agency stated the following:

"Because of the peculiar overlap of the issues discussed at oral argument, the Agency believes that the Court may have a mistaken impression of the Agency's and the Board's positions in this case. As discussed at oral argument, these issues present significant public policy concerns that the Agency and the Board grapple with in many cases. The Agency believes, therefore, that the Court should consider the points presented in this motion before drafting its decision.

[ ]First, the Agency does *not* believe that it may disobey Board orders. The record in this case reflects *no* intentional disregard of *any* Board order, and the Board has never found that the Agency intentionally disrespected one of its orders in this case. The good-faith dispute between the Agency and the Board does not relate to whether the Agency must comply with Board orders, for clearly it must; the dispute relates to the scope of the Agency's obligations in following the Board's orders.

[ ]In this case, for example, the Agency believed that it was following the Board's order when it issued the permit with conditions. [Because at this point in its motion, the Agency makes factual assertions not in the record, we omit those assertions.]

[ ]If any statements by counsel suggested any other legal position, counsel misspoke. The Agency believes that the public interest requires the Court to consider these points before issuing its decision." (Emphasis in original.)

Grigoleit objected to the Agency's motion, and this court has today denied it. In support of its objections, Grigoleit wrote the following:

"The AGENCY's position is clearly described in the AGENCY's Brief, and the position was confirmed at oral argument in this cause. Now, apparently experiencing discomfort as a result of this Court's inquiries during oral argument, the AGENCY wishes to amend its argument. ***

## ARGUMENT

The AGENCY seeks to alter its position after two years (at a minimum) of refusing to comply with repeated orders of the BOARD. The AGENCY apparently had no uncertainty in its position that the AGENCY alone determines when, and if, a permit is to be granted when the AGENCY appeared before the BOARD, or when the AGENCY filed its Brief in this Court, or even when the AGENCY argued the matter on January 20, 1993. After this Court inquired as to the basis of the AGENCY's position, the AGENCY now has qualms about its arguments.

\* \* \*

The spurious attempt by the AGENCY to modify the position which it has taken throughout this case is improper. The AGENCY's pleading, entitled Motion to Clarify, is not only misleading, it is also contrary to the arguments made by the AGENCY in its Brief, as well as contrary to the position taken by the AGENCY at oral argument herein. The Motion is not truly one seeking clarification, but rather, seeks to add confusion."

The accuracy of Grigoleit's objection is best shown by the following excerpts from the brief the Agency submitted to this court:

"The December 6th order directed the Agency to issue Grigoleit a permit. [Citation to Record.] Settled law vests broad discretion in the Agency to impose appropriate conditions on permits that it issues. 'In granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board.' IEPA §39(a), Ill. Rev. Stat. ch. 111½, par. 1039(a) (1991). *See also id.* (the Agency has a 'duty' to issue a permit only upon 'proof by the applicant that the facility ... will not cause a violation of this Act or of regulations hereunder'). Under these provisions, the Agency had an obligation to use its discretion to impose appropriate conditions on Grigoleit's permit.

\*\*\* Because the Agency has such discretion to impose conditions on permits, the December 6th order—which merely directed the Agency to 'issue' a permit—was not final.

\*\*\*

*Browning-Ferris* and *Jurcak* arguably differ from this case because those cases involved no remand from the Board. They should not control this case, the argument goes, be-

cause the December 6th order effectively ordered the Agency to issue the permit without exercising any discretion regarding conditions. This argument, however, conflicts with the [Act] itself. With regard to conditions, the [Act] does not distinguish between initial permit reviews and remands from the Board that order the Agency to issue a permit. To the contrary, the [Act] establishes only one mechanism for granting permits: '[i]n granting permits *the Agency may impose such conditions as may be necessary* to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board.' IEPA §39(a), Ill. Rev. Stat. ch. 111½, par. 1039(a) (1991) (emphasis added). The General Assembly did not give the Agency authority to issue a permit without considering conditions.

Any other construction of the [Act] risks real environmental danger."

The General Assembly has charged the Agency with the important task of protecting our environment, and the Agency's conduct in this case is unworthy of the General Assembly's confidence. Vigorously advocating environmental concerns is not mutually exclusive with abiding by the law, and the conduct of the Agency in this case serves to denigrate—not further—its ability to protect our environment.